SIDLEY AUSTIN LLP
Samuel A. Newman (admitted *pro hac vice*)
555 West Fifth Street
Los Angeles, California 90013
Telephone:    (213) 896-6000
Facsimile:    (213) 896-6000
Email:    sam.newman@sidley.com

SIDLEY AUSTIN LLP
Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, IL 60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
Email:    jgarvey@sidley.com

SIDLEY AUSTIN LLP
Rakhee V. Patel (TX Bar No. 00797213)
Nathan C. Elner (admitted *pro hac vice*)
Parker G. Embry (TX Bar No. 24126826)
Chelsea M. McManus (TX Bar No. 24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    rpatel@sidley.com
    nelner@sidley.com
    parker.embry@sidley.com
    cmcmanus@sidley.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPEL PHARMACEUTICALS, INC., *et al.*[1] | Case No. 23-80016 (SGJ) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PROPOSED AMENDMENT TO STALKING HORSE
ASSET PURCHASE AGREEMENT AND PROPOSED FORM OF SALE ORDER**

**PLEASE TAKE NOTICE** that on December 20, 2023, the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") filed the *Debtors' Motion for Entry of an Order (I)(A) Approving the Bid Procedures; (B) Authorizing the Debtors to Select JN Bidco LLC as the Stalking Horse Purchaser Substantially Along the Terms Defined in the Stalking Horse APA and Approving Bid Protections; (C) Establishing Bid Deadlines, an Auction, and a Sale Hearing; (D) Approving the Form and Manner of Sale Notice; (E) Approving Assignment*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are:  Impel Pharmaceuticals Inc. (8238); and Impel NeuroPharma Australia Pty Ltd (N/A).  The Debtors' service address is 201 Elliot Avenue West, Suite 260, Seattle, WA 98119.

*and Assumption Procedures; (F) Approving the Form and Manner of Potential Assumption and*

*Assignment Notice; (II)(A) Authorizing the Sale of the Assets Free and Clear; and (B) Approving*

*the Assumption and Assignment of Designated Contracts; and (III) Granting Related Relief*

[Docket No. 18] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, on January 11, 2024, the Court entered an

order granting, in part, the Motion and approving the bid procedures (the "Bid Procedures")

annexed as Exhibit 1 to the order [Docket No. 137] (the "Bid Procedures Order").[2]  Attached to

the Bid Procedures Order as Exhibit 2 was a certain asset purchase agreement between the Debtors

and JN Bidco LLC (the "Stalking Horse APA").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bid Procedures Order,

and after consultation with the Consultation Parties, the Debtors cancelled the Auction [Docket

No. 183] and designated JN Bidco LLC (the "Stalking Horse Purchaser") as the Winning Bidder

[Docket No. 186].

**PLEASE TAKE FURTHER NOTICE** that the Stalking Horse Purchaser seeks to

purchase the Assets free and clear of liens, claims, encumbrances, and other interests (the "Sale")

on the terms set forth in the Stalking Horse APA.

**PLEASE TAKE FURTHER NOTICE** that attached as **Exhibit A** is a proposed first

amendment to the Stalking Horse APA (the "Proposed Amendment"), which revises the Stalking

Horse APA to provide the Debtors with enhanced economics related to a subsequent sale of the

Precision Olfactory Delivery technology[3] by the Stalking Horse Purchaser and clarify the scope

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid
Procedures Order.

[3] Further information on the Precision Olfactory Delivery technology can be found in the *Declaration of Brandon
Smith, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Proceedings* [Docket No. 15].

of assumed liabilities under the Stalking Horse APA.

**PLEASE TAKE FURTHER NOTICE** that attached as **<u>Exhibit B</u>** is a form of proposed order (the "<u>Proposed Sale Order</u>") authorizing the Debtors and Stalking Horse Bidder to enter into the Proposed Amendment and consummate the Sale Transaction on the terms of the Stalking Horse Purchase Agreement, as amended.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek entry of the Proposed Sale Order at a hearing scheduled for **February 1, 2024, at 9:30 a.m. (CT)** before the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge for the Bankruptcy Court for the Northern District of Texas, Courtroom 1, floor 14, 1100 Commerce Street, Dallas, TX 75242-1496.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and the Bid Procedures Order, as well as all related exhibits, including the Stalking Horse APA and this Notice and Proposed Amendment are available by: ((i) visiting the website of the Debtors' claims, noticing, and solicitation agent, Omni Agent Solutions LLC ("<u>Omni</u>") at: https://omniagentsolutions.com/Impel (the "<u>Case Website</u>"), (ii) (888) 202-6183 (Toll-Free) or (747) 288-6396 (International), and/or (iii) emailing ImpelInquiries@OmniAgnt.com; or (iv) for a fee via PACER by visiting http://ecf.txnb.uscourts.gov/.

**PLEASE TAKE FURTHER NOTICE** that you may obtain additional information concerning these Chapter 11 Cases on the Case Website.

*[Remainder of page intentionally left blank]*

Dated: January 29, 2024
Dallas, Texas

**SIDLEY AUSTIN LLP**

/s/ *Rakhee V. Patel*

Samuel A. Newman (admitted *pro hac vice*)
555 West Fifth Street
Los Angeles, California 90013
Telephone:    (213) 896-6000
Facsimile:    (213) 896-6600
Email:        sam.newman@sidley.com

Rakhee V. Patel (TX Bar No. 00797213)
Nathan C. Elner (admitted *pro hac vice*)
Parker G. Embry (TX Bar No. 24126826)
Chelsea M. McManus (TX Bar No. 24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:        rpatel@sidley.com
              nelner@sidley.com
              parker.embry@sidley.com
              cmcmanus@sidley.com

Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, IL 60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
Email:        jgarvey@sidley.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on January 29, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

<u>/s/ *Rakhee V. Patel*</u>
Rakhee V. Patel

## Exhibit A

**Proposed First Amendment to the Stalking Horse APA**

## AMENDMENT NO. 1 TO
## ASSET PURCHASE AGREEMENT

This Amendment No. 1 to Asset Purchase Agreement (this "*Amendment*") is made and entered into as of January [__], 2024 (the "*Effective Date*") by and among JN Bidco LLC, a Puerto Rico limited liability company ("*Purchaser*") and Impel Pharmaceuticals Inc., a Delaware corporation (the "*Seller*").

## RECITALS

WHEREAS, Purchaser and Seller are parties to that certain Asset Purchase Agreement, dated as of December 18, 2023 (the "*Purchase Agreement*");

WHEREAS, capitalized terms not herein defined shall have the meanings ascribed to them in the Purchase Agreement;

WHEREAS, Purchaser and Seller desire to amend the Purchase Agreement in accordance with and as set forth herein; and

WHEREAS, Section 10.3 of the Purchase Agreement provides that the Purchase Agreement may be amended by a written instrument making specific reference to the Purchase Agreement executed by the party against whom enforcement of such amendment is sought.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in the Purchase Agreement and this Amendment and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Amendment of Purchase Agreement**.  The Purchase Agreement is hereby amended as follows:

   1.1.    Section 2.3(a) of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

   (a)    all Liabilities relating to the Transferred Assets, whether incurred or arising prior to, at or after the Closing (other than those Liabilities relating to any breach, tort including any tort based on a failure to warn, failure to comply with law, failure to comply with industry standards, Nitrosamine Liabilities, or other wrongful conduct); provided that the Liabilities referred to in this clause (a) shall not include Liabilities that are (i) accounts payable of the Seller Group arising prior to the Petition Date or (ii) debt for borrowed money consisting of loans;

   1.2.    Section 2.3(d) of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

   (d)    all accounts payable, including, for the avoidance of doubt, obligations that will become accounts payable following invoice, of the Seller Group to the extent related to the Business and arising following the Petition Date (the Liabilities referred to in this clause (d), collectively, the "**Post-Petition Assumed Payables**");

1.3     Section 2.3 of the Purchase Agreement is hereby amended to include the following as new Section 2.3(f):

(f)     all intercompany obligations of the Seller Group to the extent related to the Business and arising following the Petition Date.

1.4     Section 2.5 of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

**2.5     Excluded Contracts**. Pursuant to Section 5.3(b), Purchaser shall be entitled, in its sole discretion, by written notice to the Seller up to three Business Days prior to the Closing Date, to elect not to purchase or assume one or more Assigned Contract, in which case, notwithstanding anything in this Agreement or any Related Document to the contrary, such Assigned Contract shall be considered an excluded contract ("**Excluded Contract**") (and shall constitute an Excluded Asset and not be included in the Transferred Assets) for all purposes of this Agreement and Purchaser shall not have any obligation to satisfy or pay any Cure Costs or other Liabilities (in the case of other Liabilities, other than to the extent such Liabilities also constitute Post-Petition Assumed Payables) with respect to such Excluded Contract. Each assignable Assigned Contract that Purchaser does not elect to remove from the list of Assigned Contracts pursuant to Section 5.3(b) shall be an Assigned Contract.

1.4.     Section 2.13(b) of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

(b)     Licensing Payments. During the Earn-out Period, Purchaser shall pay Seller thirty-three percent (33%) of the annual POD Technology Licensing Revenue (the "**POD Licensing Share**") generated during each fiscal year; provided that, if the POD Technology Licensing Revenue is as a result of a transaction with the Person listed on Schedule 1 attached hereto, the POD Licensing Share shall be forty percent (40%).

1.5.     Schedule 1.1(b) of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

None.

2.  **Schedule 1**.  Promptly following the Effective Date, the Seller shall identify to Purchaser in writing (email being sufficient) the Person to be listed on Schedule 1 attached hereto.  The Seller and Purchaser acknowledge and agree that, without any further action required by either party, Schedule 1 shall be automatically updated to reflect the identity of such Person.

3.  **Effect**.  Except as expressly modified by this Amendment, the Purchase Agreement shall remain in full force and effect.

4.  **Miscellaneous**. Sections 10.4 (Severability; Specific Versus General Provisions), Section 10.7 (Counterparts), 10.8 (Governing Law), 10.9 (Submission to Jurisdiction; Consent to Service

of Process) and 10.10 (Waiver of Jury Trial) of the Purchase Agreement shall apply *mutatis mutandis* to this Amendment.

*[signature page follows]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the Effective Date.

**PURCHASER:**                                    **SELLER:**

**JN BIDCO LLC**                                  **IMPEL PHARMACEUTICALS INC.**


By: _____           By: _____
Name:  Ray Canole                                 Name:  Leonard Paolillo
Title:  Authorized Signatory                     Title:  Interim Chief Executive Officer

## Schedule 1

[_____] or any of its Affiliates.

## Exhibit B

**Proposed Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPEL PHARMACEUTICALS, INC., *et al.*[1] | Case No. 23-80016 (SGJ) |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING THE SALE**
**OF THE DEBTORS' ASSETS, (II) AUTHORIZING ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Upon the Motion[2] of the debtors and debtors in possession in the above-captioned chapter

11 cases (collectively, the "Debtors") for entry of an order (this "Sale Order"), pursuant to sections

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of the Debtors' federal tax identification number, are: Impel Pharmaceuticals Inc. (8238); and Impel NeuroPharma Australia Pty Ltd (N/A). The Debtors' service address is 201 Elliot Avenue West, Suite 260, Seattle, WA 98119.

[2] Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of an Order (I)(A) Approving the Bid Procedures; (B) Authorizing the Debtors to select JN Bidco LLC as the Stalking Horse Purchaser Substantially Along the Terms Defined in the Stalking Horse APA and Approving*

105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

Rule 9013-1 of the Bankruptcy Local Rules for the Northern District of Texas (the "Bankruptcy

Local Rules"), and section E of the *Procedures for Complex Chapter 11 Cases in the*

*Northern District of Texas* (the "Complex Case Procedures"), authorizing (a) the Debtors' sale of

certain of their property free and clear of liens, claims, encumbrances, and interests on the terms

set forth in that certain *Asset Purchase Agreement by and between JN Bidco LLC, as Purchaser,*

*and Impel Pharmaceuticals Inc., as Seller, Dated December 18, 2023* (the "Stalking Horse APA")

[Docket No. 18, Ex. A-2]; (b) the assumption and assignment of the Designated Contracts in

connection with the Stalking Horse APA; and (c) granting related relief, all as more fully set forth

in the Motion; and this Court having previously entered the *Order (I)(A) Approving the Bid*

*Procedures; (B) Authorizing the Debtors to Select JN Bidco LLC as the Stalking Horse Purchaser*

*Substantially Along the Terms Defined in the Stalking Horse APA and Approving Bid Protections;*

*(C) Establishing Bid Deadlines, an Auction, and a Sale Hearing; (D) Approving the Form and*

*Manner of Sale Notice; (E) Approving Assignment and Assumption Procedures; (F) Approving*

*the Form and Manner of Potential Assumption and Assignment Notice; (II)(A) Authorizing the*

*Sale of the Assets Free and Clear; and (B) Approving the Assumption and Assignment of*

*Designated Contracts; and (III) Granting Related Relief* [Docket No. 137] (the "Bid Procedures

Order"), authorizing and approving, among other things, the Debtors' designation of JN Bidco

LLC (the "Stalking Horse Purchaser" or the "Purchaser") as the Stalking Horse Purchaser for the

---

*Bid Protections; (C) Establishing Bid Deadlines, an Auction, and a Sale Hearing; (D) Approving the Form and*
*Manner of Sale Notice; (E) Approving Assignment and Assumption Procedures; (F) Approving the Form and Manner*
*of Potential Assumption and Assignment Notice; (II)(A) Authorizing the Sale of the Assets Free and Clear; and (B)*
*Approving the Assumption and Assignment of Designated Contracts; and (III) Granting Related Relief* (the "Motion")
or the Stalking Horse APA (defined herein).

Assets and certain Bid Protections; and the *Notice of Selection of Winning Bid* [Docket No. [●]] (the "Notice of Winning Bid"), filed pursuant to the Bid Procedures Order, announcing the Purchaser as the highest or otherwise best bidder for the Assets pursuant to the Stalking Horse APA following the Auction and the Purchaser having submitted the highest or otherwise best offer for assets to be sold to the Purchaser as identified in the Stalking Horse APA (the "Transferred Assets"), as reflected in the Stalking Horse APA, annexed hereto as **Exhibit 1**, and as from time to time amended in accordance with this Order or further order of this Court, including by the First Amendment to Stalking Horse APA (defined below), pursuant to which the Debtors have agreed, among other things, to sell the Transferred Assets to the Purchaser, including the Designated Contracts that will be assumed and assigned to the Purchaser on the terms and conditions set forth in the Stalking Horse APA (collectively, the "Sale Transaction"); and the Debtors having filed the *Notice of Cure Amounts and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale Transaction* [Docket No. 104] (the "Cure Notice") and served the *Notice of Assumption and Assignment of Designated Contracts* (the "Assignment Notice") in accordance with the Bid Procedures Order; and this Court having conducted the Sale Hearing to consider approval of the Sale Transaction, at which time all interested parties were offered an opportunity to be heard with respect to the Sale Transaction; and this Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the First Day Declaration [Docket No. 15], (iii) and the Contractor Declaration [Docket No. 18, Ex. B], and the arguments and representations of counsel made, and the evidence proffered or adduced at the Sale Hearing; and it appearing that due and proper notice of the Motion, the Stalking Horse APA, the First Amendment to the Stalking Horse APA, the Cure Notice, the Assignment Notice, the Bid Procedures Order, and this Sale Order having been provided in accordance with the Bid Procedures

Order; and all objections, if any, to approval of the Sale Transaction having been withdrawn, resolved (including by separate agreement between the objecting party and the Debtors), adjourned, or overruled as provided in this Sale Order; and it appearing entry of this Sale Order and consummation of the Sale Transaction are in the best interests of the Debtors, their estates and creditors, and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation thereon; and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  This Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.  To the extent of any conflict, the oral rulings control.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction over the Motion and the Sale Transaction described therein, and in the Stalking Horse APA, including, without limitation, the sale of the Transferred Assets, pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in the Northern District of Texas and in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

C.      **Statutory Predicates**.  The statutory authorization for the relief granted herein is found in sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014 and the Complex Case Procedures.

D.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

E.      **Incorporation By Reference**.  Findings of fact and conclusions of law in the Bid Procedures Order are incorporated herein by reference.

F.      **Marketing Process & Auction Cancellations**.      The Debtors and their professionals adequately marketed the Transferred Assets to all Potential Bidders in accordance with the Bid Procedures Order.  The sale process set forth in the Bid Procedures Order afforded all Potential Bidders a full, fair, and reasonable opportunity to submit a higher or otherwise better offer to purchase the Transferred Assets and participate in the sale process.  No other person, or group of persons, has offered to purchase the Transferred Assets for an amount that would give equal or greater value to the Debtors than the value provided by the Stalking Horse Purchaser pursuant to the Stalking Horse APA.  Pursuant to Article XII of the Bid Procedures, the Debtors cancelled the Auction [Docket No. 183].  Under the circumstances, the marketing process was robust and sufficiently tested the market to determine the highest and best offer for the Transferred Assets.

5

G.     **Sale Hearing**.  This Court conducted the Sale Hearing on [February 1, 2024], at which time this Court considered the Motion, the evidence and testimony presented, and the statements and argument of counsel, as applicable, in support of the Motion, the Stalking Horse APA, and the Sale Transaction.  Except as otherwise expressly provided in this Sale Order, all objections to the Sale Transaction and the relief requested in the Motion, whether timely or untimely and whether written or made orally at the Sale Hearing, if any, were heard and considered by this Court.  All such objections, if any, were either overruled by this Court, are resolved by the terms hereof or by separate agreement between the objecting party and the Debtors, or were adjourned or withdrawn as a result of an agreement between the objecting party and the Debtors.

H.     **Sound Business Purpose**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction pursuant to the Stalking Horse APA and all other agreements, instruments, certificates, and other documents to be entered into or delivered by any party in connection with the Sale Transaction, including, without limitation, any assumption and assignment agreements entered into in connection therewith (collectively, the "Transaction Documents"), outside of the ordinary course of business and in accordance with the requirements of section 363(b) of the Bankruptcy Code. Consummation of the Sale Transaction prior to and not as part of a chapter 11 plan is (i) justified under the circumstances, (ii) an appropriate exercise of the Debtors' business judgment, and (iii) in the best interests of the Debtors, their estates, and their creditors.

I.     The Debtors' decision to enter into the Stalking Horse APA with the Stalking Horse Purchaser, subject to higher and better offers, was a due and proper exercise of the Debtors' business judgment and was authorized pursuant to the Bid Procedures Order.  The Bid Protections contained in the Stalking Horse APA (i) were necessary to preserve the value of the Debtors'

estates by inducing the Stalking Horse Purchaser to enter into the Stalking Horse APA and (ii) are

in compliance with the Bid Procedures and authorized by the Bid Procedures Order.

J.      Following a robust marketing process consistent with the Bid Procedures Order,

the Stalking Horse APA constitutes the highest or otherwise best offer for the Transferred

Assets.  No other person, or group of persons, has offered to purchase the Transferred Assets for

an amount that would give equal or greater value to the Debtors than the value provided by the

Stalking Horse Purchaser pursuant to the Stalking Horse APA.  The Sale Transaction is the best

means available to the Debtors to maximize the return to their creditors and limit the losses to

counterparties to the Designated Contracts.  No alternative to the Sale Transaction exists that

would provide a greater value to the Debtors, their creditors, or other parties in interest.

K.      Approval of the Sale Transaction is necessary to maximize the value the Debtors'

estates will receive for the Transferred Assets.  It is important to the Debtors' customers and

suppliers that the transition from the Debtors to the Purchaser occurs smoothly and without

unnecessary delay, so that any customer and vendor issues may be minimized.  It is also important

that the Sale Transaction be consummated as expeditiously as possible to avoid any potential loss

of customers and suppliers that may result from continued uncertainty about the future of the

Transferred Assets.

L.      Accordingly, the sale of the Transferred Assets pursuant to sections 105(a) and 363

of the Bankruptcy Code upon the terms and conditions set forth in the Stalking Horse APA is the

optimal means to create value for the benefit of the Debtors' estates.  The Sale Transaction

maximizes the value of the Transferred Assets because the Transferred Assets are being sold as

part of a going concern, thereby preserving the continuity and remaining goodwill value associated

with the Transferred Assets.  Unless the sale is concluded expeditiously, as provided for in the
Motion and the Stalking Horse APA, creditor recoveries may be substantially diminished.

      M.     **Fair Purchase Price**.  The consideration provided by the Stalking Horse Purchaser
pursuant to the Stalking Horse APA (i) is fair and adequate; (ii) constitutes reasonably equivalent
value and fair consideration under the Bankruptcy Code and under the laws of the United States,
any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent
Transfer Act, the Uniform Fraudulent Conveyance Act, and similar laws); and (iii) will provide an
equal or greater recovery for the Debtors' creditors than would be provided by any other
reasonably practicable available alternative.  The terms of the Stalking Horse APA, the Transaction
Documents, and the Sale Transaction are fair and reasonable under the circumstances of the
Debtors' chapter 11 cases, and the Debtors' determination to proceed with such transaction
constitutes a valid and sound exercise of the Debtors' business judgment.

      N.     **Adequate and Reasonable Notice**.  As evidenced by the affidavits of service filed
with this Court [Docket Nos. 34, 118-19, 136, and 152], and based upon the record of the Sale
Hearing, and as previously determined by this Court in the Bid Procedures Order, (i) due, proper,
timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, the Stalking
Horse APA, and the Sale Transaction has been provided to all parties in interest, (ii) such notice
was and is good, sufficient, and appropriate under the circumstances, and reasonably calculated to
reach and apprise all holders of Liens, claims, encumbrances, and other Interests (as defined
herein), including, without limitation, rights or claims based on any successor, transferee,
derivative, or vicarious liabilities, and was provided in accordance with the applicable
requirements of the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Procedures, and
the procedural due process requirements of the United States Constitution, and (iii) no other or

further notice of the Motion, the Auction, the Sale Hearing, the Stalking Horse APA, the Sale Transaction, or of the entry of this Sale Order is necessary or shall be required.

O.    In accordance with the Bid Procedures Order, the Debtors filed with this Court and served the Cure Notice, containing (i) the list of all contracts to potentially be assigned in connection with the Sale Transaction, (ii) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of potentially assigned contracts that may be Designated Contracts and rights thereunder, (iii) Cure Amounts, where applicable, and (iv) the procedures for objecting thereto, on all counterparties to such potentially assigned contracts and any party that has requested notice pursuant to Bankruptcy Rule 2002 ("Rule 2002 Notice List"), and caused such notice to be published on the website of the Debtors' noticing agent, Omni Agent Solutions. ("Omni") [Docket No. 104].  The Cure Notice (a) included the Debtors' good faith calculation of the Cure Amounts with respect to each potentially assigned contract; (b) stated that assumption or assignment of any potentially assigned contract is not guaranteed and is subject to this Court's approval; (c) prominently displayed the deadline to file a Cure Objection; and (d) prominently displayed the dates, times, and location of the Sale Hearing.  The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances and no other or further notice need be given.

P.    In accordance with the Bid Procedures Order, the Debtors also served the Assignment Notices on the counterparties to the Designated Contracts, which contained (i) the list of Designated Contracts selected by the Purchaser, (ii) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of the Designated Contracts and rights thereunder, (iii) the Cure Amounts, and (iv) the procedures for objecting thereto, on all counterparties to the Designated Contracts and all parties on the Rule 2002 Notice List.  The

service and provision of the Notice of Designated Contracts was good, sufficient, and appropriate under the circumstances and no other or further notice need be given in connection with the assumption and assignment of the Designated Contracts.

Q.      A reasonable opportunity to object and to be heard with respect to the sale of the Transferred Assets, the assumption and assignment of the Designated Contracts, and the determination of defaults and Cure Amounts related thereto, as well as the Stalking Horse APA and the entry of this Sale Order has been given to all interested Persons.

R.      **<u>Good Faith Purchaser</u>**.  The Debtors, the Purchaser, and their respective principals, counsel, and advisors have negotiated, proposed, and entered into the Stalking Horse APA, the Transaction Documents, and each of the transactions contemplated therein in good faith, without collusion and from arm's-length bargaining positions.  The Purchaser is a "good faith purchaser" and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction and, as such, is entitled to all the protections afforded thereby.  The Purchaser has proceeded in good faith in all respects.  The terms of the Sale Transaction, including the sale price in respect of the Transferred Assets, were not controlled by any agreement among Potential Bidders and neither the Debtors nor the Purchaser have engaged in collusion or any conduct that would cause or permit the Stalking Horse APA to be challenged, avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code or any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.  The Stalking Horse APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, or possession, or the District of Columbia, or any other applicable law.  Neither the Debtors nor the Purchaser entered into the Stalking Horse APA or are

10

consummating the Sale Transaction with any fraudulent or otherwise improper purpose. The Purchaser is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Purchaser and the Debtors.

S.       The Sale Transaction, which includes the sale of the Transferred Assets pursuant to the Stalking Horse APA and all covenants in and conditions thereto, is an integrated transaction, meaning that each component is an essential part of every other component and that the Sale Transaction can be consummated only if all of the components are consummated. Accordingly, each component of the Sale Transaction is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

T.       **Sale Free and Clear under Section 363(f)**. The Purchaser would not have entered into the Stalking Horse APA and would not consummate the Sale Transaction without entry of this Sale Order approving the Sale Transaction pursuant to section 363(f) of the Bankruptcy Code. Except as expressly provided otherwise in the Stalking Horse APA or this Sale Order, the Debtors have satisfied the standard set forth in section 363(f) of the Bankruptcy Code for selling the Transferred Assets free and clear of all of the following (collectively, "Interests"): Liens, claims (including, but not limited to, those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, pledges, charges, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, royalties, hypothecations, preferences, debts, easements, suits, licenses, rights of recovery, judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state, and local taxes), covenants, indentures, instruments, leases (other than those leases to be

11

transferred pursuant to the Sale Transaction (the "Transferred Leases")), claims for reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances, or interests of any kind or nature whatsoever against the Debtors, or any of the Transferred Assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against the Debtors or against any property of the Debtors, claims arising under state or federal antitrust laws, any indemnification claim or liabilities relating to any act or omission of the Debtors or any other person prior to the Closing Date or any Excluded Liabilities, any derivative, vicarious, transferee or successor liability claims, alter ego claims, de facto merger claims, rights or causes of action (whether known or unknown, legal or equitable, contingent, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfect or unperfected, allowed or disallowed, noticed or unnoticed, recorded or unrecorded, material or non-material, statutory or non-statutory, and asserted or unasserted, whether arising prior to or subsequent to the commencement of the Debtors' chapter 11 cases (other than Permitted Liens and the Assumed Liabilities), whether imposed by agreement, understanding, law, equity or otherwise, including without limitation (i) those Interests that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification, or termination of the Debtors' interests in the Transferred Assets, or any similar rights, if any, (ii) those Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, hypothecations, liens, judgments, demands, encumbrances, rights of first refusal or charges of any

12

land or nature, if any, (iii) those Interests that are Excluded Liabilities as set forth in the Stalking

Horse APA; (iv) those Interests held by the Prepetition Term Loan Lenders as provided in the

order entered by the Court at Docket No. 149 (the "Final Cash Collateral Order") and (v) those

Interests arising under or out of, in connection with, or in any way related to the Debtors or any of

the Debtors' predecessors, Affiliates, or representatives, any of the Sellers' interests in the

Transferred Assets, or the operation of any of the Debtors' businesses before the applicable

Closing Date, including, without limitation, Interests based on successor liability, transferee

liability, derivative liability, vicarious liability, de facto merger, continuation or continuity, or any

similar theories under applicable state or federal law or otherwise.  Each holder of an Interest in

the Transferred Assets (a) has, subject to the terms and conditions of this Sale Order, consented or

shall be deemed to have consented to the relief requested in the Motion and with respect to the

Sale Transaction, (b) could be compelled in a legal or equitable proceeding to accept money

satisfaction of such Interest, or (c) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code.  Those holders of Interests that did not object to, or withdrew their objections,

if any, to, the relief requested in the Motion, the Stalking Horse APA, the Sale Transaction, or the

Assignment Notices are deemed to have consented to the relief requested in the Motion, including,

without limitation, the sale of the Transferred Assets and the assumption and assignment of the

Designated Contracts to the Purchaser, pursuant to section 363(f)(2) of the Bankruptcy Code.

Those holders of Interests that did object that have an Interest in the Transferred Assets could be

compelled in a legal or equitable proceeding to accept money satisfaction of such Interest pursuant

to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of

363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Interests

that constitute interests in the Transferred Assets, if any, attach solely to the proceeds of the Sale

Transaction ultimately attributable to the property in which they have an Interest, in the same order of priority and with the same validity, force, and effect that such holders had prior to the Sale Transaction, subject to any defenses of the Debtors.

U.      Except as expressly provided otherwise in the Stalking Horse APA or this Sale Order, neither the Purchaser nor any of the Purchasers' Affiliates (including any subsidiary of the Purchasers, any person or entity that could be treated as a single employer with the Purchasers pursuant to Section 4001(b) the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 414(b), (c), (m) or (o) of the Internal Revenue Code of 1986, as amended ("IRC"), and any of their respective managed funds or accounts, any of their respective lenders or investors, and, in each case of the foregoing, each of their respective former, current, or future, shareholders, equity holders, owners, members, managers, employees, representatives, officers, limited or general partners, directors, agents, professionals, successors, affiliates, or permitted assignees, (collectively with the Purchaser, the "Purchaser Group") shall be responsible for any Interests, including in respect of, based on, relating to, and/or arising under, without limitation, the following: (i) any labor, collective bargaining, or employment agreements; (ii) any mortgages, deeds of trust, or security interests; (iii) any intercompany loans and receivables between one or more of the Seller and any Debtor; (iv) any pension, multiemployer (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare plan participation or benefit trust, compensation or other employee benefit plans, agreements, practices and programs (including any Employee Benefit Plan) of or related to any of the Debtors or any of the Debtors' Affiliates or predecessors or any current or former employees of any of the foregoing, including, without limitation, any pension plan of any of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (v) the Debtors' business

14

operations or cessation thereof; (vi) any litigation involving one or more of the Debtors; (vii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the Multi-Employer Pension Plan Amendments Act of 1980, including all amendments thereto, (f) the Worker Adjustment and Retraining Notification Act of 1988 or any similar state or local law ("WARN"), (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the IRC and of any similar state law (collectively, "COBRA"), (i) the National Labor Relations Act, (j) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (k) state harassment, discrimination, or retaliation laws, (l) state unemployment compensation laws or any other similar state laws, or (m) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or relating to any wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (viii) any liabilities arising under any Environmental Laws with respect to any assets owned or operated by any of the Debtors or any corporate predecessor of any of the Debtors at any time prior to the applicable Closing Date; (ix) any product liability law; (x) any antitrust laws; (xi) any bulk sales or similar law; (xii) any Employee Benefit Plan) of or related to any of the Debtors or any of the Debtors' Affiliates or tax statutes or ordinances, including, without limitation, the IRC; and (xiii) any Excluded Liabilities.

V.    **No Successor, Transferee, or Similar Liability**.    Except for the Assumed Liabilities, as expressly set forth in the Stalking Horse APA or this Sale Order, the Purchaser has

not expressly or impliedly assumed any obligation of the Debtors, or any other party, with respect to the Interests and the Excluded Liabilities, whether at law or in equity, whether by payment, setoff, recoupment, or otherwise, directly or indirectly, and whether from the Transferred Assets or otherwise, including, without limitation, based on successor, transferee, derivative, or vicarious liability.

W.     The Sale Transaction described by the Stalking Horse APA and the Transaction Documents does not amount to a consolidation, merger, or de facto merger of the Purchaser and any of the Debtors and/or any of the Debtors' estates.

X.     There is no continuity between the Purchaser and any of the Debtors.  The Purchaser is not holding itself out to the public as a continuation of any of the Debtors or their respective estates, businesses, or operations.  The Purchaser is not a mere continuation of any of the Debtors or their respective estates, businesses, or operations.  There is no common identity between any of the Debtors and the Purchaser.   The Purchaser does not constitute a successor to any of the Debtors or their estates.

Y.     The Purchaser and the Debtors are not entering into the Stalking Horse APA and Transaction Documents or consummating the Sale Transaction for the fraudulent purpose of escaping liability for the Debtors' obligations or to defraud creditors in any way.

Z.     **Sale Free and Clear and Continuation of Existing Approvals Required by the Purchaser**.     The Purchaser expressly negotiated for the protection of obtaining the Transferred Assets free and clear of all Interests, including, without limitation, any potential successor liability claims (other than Permitted Liens and the Assumed Liabilities).  The total consideration to be provided under the Stalking Horse APA reflects the Purchaser's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession

16

of the Transferred Assets free and clear of all Interests of any kind or nature whatsoever (including, without limitation, any potential successor liability claims (other than Permitted Liens and the Assumed Liabilities)).  The Purchaser would not have entered into the Stalking Horse APA and would not consummate the Sale Transaction, if the sale of the Transferred Assets to the Purchaser and the assumption and assignment of the Designated Contracts to the Purchaser by the Debtors, were not free and clear of all Interests of any kind or nature whatsoever (other than the Permitted Liens and the Assumed Liabilities), as contemplated by this Sale Order, except as otherwise set forth herein, or if the Purchaser would, or in the future could, be liable for any of the Interests, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liabilities. The Purchaser would not have entered into the Stalking Horse APA and would not consummate the Sale Transaction if the Purchaser would not be authorized, as of the Closing Date, to operate under or renew any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets (subject, in each case, to the terms of the Stalking Horse APA); if such licenses, permits, registrations, and governmental authorizations or approvals would not be deemed to have been transferred to the Purchaser as of the Closing Date; or if existing licenses or permits applicable to the business would not remain active and in place for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred.

AA.    **Assumption and Assignment of the Designated Contracts**.  The Assumption and Assignment Procedures approved pursuant to the Bid Procedures Order are integral to the Stalking Horse APA, do not constitute unfair discrimination, are in the best interests of the Debtors, their estates and creditors, and all other parties in interest, and are based on the reasonable exercise of sound business judgment by the Debtors.  At the Closing and pursuant to Section 365 of the

Bankruptcy Code and this Sale Order, the Debtors shall assume and, subject to the terms in the

Stalking Horse APA, assign to the Purchaser, and Purchaser shall take assignment from the

Debtors of, the Designated Contracts.

BB.     On or before the Closing Date, the Purchaser will pay all Cure Amounts with

respect to the Designated Contracts proposed to be resolved after the Closing Date in accordance

with Paragraph 19 below.  Accordingly, the Debtors or the Purchaser, as applicable, will have, to

the extent necessary, (i) cured any default existing prior to the Closing with respect to the

Designated Contracts, and (ii) provided compensation, if any, to each counterparty to a Designated

Contract for any actual pecuniary loss to such party resulting from a default prior to the Closing

with respect to the Designated Contract with such counterparty, all within the meaning of sections

365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code.

CC.     Pursuant to section 365(f) of the Bankruptcy Code, each Designated Contract

required to be assumed and assigned under the Stalking Horse APA shall be assigned and

transferred to, and remain in full force and effect for the benefit of, the Purchaser, in accordance

with their respective terms, notwithstanding any provision in such contract or other restrictions

prohibiting its assignment or transfer.  No section of any of the Designated Contracts that would

directly or indirectly prohibit, restrict, or condition the assumption or assignment of any of the

Designated Contracts or would permit termination or modification of such Designated Contracts,

or rights and obligations thereunder, by a party other than the Debtors, on account of assignment

of such shall have any force or effect in connection with the assets transferred pursuant to the Sale

Transaction.

DD.     The assumption and assignment of the Designated Contracts (i) is necessary to sell

the Transferred Assets to the Purchaser, (ii) allows the Debtors to sell the Transferred Assets to

the Purchaser as a going concern, (iii) limits the losses suffered by counterparties to the Designated

Contracts, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the

amount of claims against the Debtors' estates by avoiding the rejection of the Designated

Contracts.  For these reasons, the Debtors have exercised sound business judgment in assuming

and assigning the Designated Contracts and such assumption and assignment is in the best interests

of the Debtors' estates.

EE.    **Adequate Assurance of Future Performance**.  Counterparties to the Designated

Contracts were provided with the Assignment Notice and had the opportunity to request and

review information with respect to the Purchaser's adequate assurance of future performance (*see*

Docket No. [●]) and were required to file any objections to the Purchaser's ability to provide

adequate assurance of future performance as contemplated under sections 365(b)(l)(C), 365(b)(3)

(to the extent applicable) and 365(f)(1) of the Bankruptcy Code (each an "Cure Objection") on or

prior to January 30, 2024 at 4:00 P.M. Central Time.  Counterparties to Designated Contracts that

failed to timely file a Cure Objection are hereby forever barred from objecting to the assumption

and assignment of Designated Contracts on the grounds of a failure to provide adequate assurance

of future performance.  Based on evidence adduced at the Sale Hearing and based on the record in

these chapter 11 cases, to the extent necessary, the Debtors have satisfied the requirements of

section 365 of the Bankruptcy Code, including sections 365(b)(l)(A), 365(b)(l)(B), 365(b)(l)(C),

365(b)(3) (to the extent applicable) and 365(f) of the Bankruptcy Code, in connection with the sale

and assumption and assignment of the Designated Contracts to the extent provided under the

Stalking Horse APA.  Accordingly, subject to payment of the Cure Amounts, the Designated

Contracts may be assumed by the Debtors and assigned to the Purchaser as provided under the

Stalking Horse APA and this Sale Order.

FF.    **Sale Order Required by the Purchaser.**  Entry of this Sale Order approving the Stalking Horse APA is a requirement of the Stalking Horse APA and such requirement is a reasonable and appropriate condition precedent to the Purchaser's consummation of the Sale Transaction.

GG.    **Acquired Assets Property of the Estates**.  The Transferred Assets constitute property of the selling Debtors' estates and title thereto is vested in the selling Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The selling Debtors have all title, interest, and/or rights in the Transferred Assets required to transfer and to convey the Transferred Assets to the Purchaser, as required by the Stalking Horse APA.

HH.    **Corporate Authority**.  Subject to the entry of this Sale Order, (i) the Debtors have full corporate power and authority to perform all of their obligations under the Stalking Horse APA and the Transaction Documents, and the Debtors' prior execution and delivery of, and performance of obligations under, the Stalking Horse APA and the Transaction Documents is hereby ratified, (ii) the Debtors have all of the corporate power and authority necessary to consummate the Sale Transaction, (iii) the Debtors have taken all corporate actions necessary to authorize, approve, execute, and deliver the Stalking Horse APA and the Transaction Documents and to consummate the Sale Transaction, except for the closing conditions expressly provided in the Stalking Horse APA and the Transaction Documents, and (iv) no consents or approvals are required to consummate the Sale Transaction or otherwise perform the obligations under the Stalking Horse APA or the Transaction Documents, except for the closing conditions expressly provided therein.

II.    **Sale in Best Interests**.  The relief requested in the Motion and set forth in this Sale Order is in the best interests of the Debtors, their respective creditors, estates, and all other parties in interest in the Debtors' chapter 11 cases.

JJ.    **Prompt Consummation**.  To maximize the value of the Transferred Assets, it is essential that the Sale Transaction occur within the timeframe set forth in the Stalking Horse APA and Bid Procedures.  Time is of the essence in consummating the Sale Transaction.  Accordingly, there is cause to lift the stays established by Bankruptcy Rules 6004 and 6006 with regards to the Sale Transaction and the assignment of the Designated Contracts.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    **Motion Is Granted**.  The Motion and the relief requested therein, and entry into and performance under the Stalking Horse APA, is GRANTED and APPROVED, as set forth herein.

2.    **Objections Overruled**. Except as stated otherwise herein, all objections to, or reservation of rights regarding, the relief requested in the Motion, the entry of this Sale Order, or the relief granted herein, including, without limitation, any objections to Cure Amounts or relating to the cure of any defaults under any of the Designated Contracts or to the assumption and assignment of any of the Designated Contracts to the Purchaser by the Debtors, that have not been withdrawn, waived, settled, or adjourned as provided in Paragraph 19 below or otherwise, or that have not otherwise been resolved pursuant to the terms hereof are hereby denied and overruled on the merits with prejudice.  All Persons that failed to timely object, or withdrew their objections, to the Motion or the entry of this Sale Order are deemed to consent to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bid Procedures

Order, and the Bid Procedures Order is a final order of this Court, has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

3.        **Notice**.  Notice of the Motion and Sale Hearing was adequate, appropriate, fair, and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, the Bankruptcy Local Rules and the Bid Procedures Order, and as such no further or other notice is required.

4.        **Approval and Authorization**.  The sale of the Transferred Assets to the Purchaser on the terms and conditions contained in the Stalking Horse APA and the Transaction Documents, including, without limitation, the Closing of the Sale Transaction as required by the Stalking Horse APA, is hereby approved in all respects pursuant to sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code and Bankruptcy Rule 6004.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized to perform all obligations under and make all payments required by the Stalking Horse APA and the Transaction Documents as and when due thereunder without further order of this Court.  The Debtors, the Purchaser, and each of their respective officers, employees, and agents are hereby authorized to (i) execute the Stalking Horse APA and the Transaction Documents, including that certain Amendment No. 1 to Asset Purchase Agreement filed as Exhibit 1 to that certain *Notice of Proposed Amendment to Stalking Horse Asset Purchase Agreement and Proposed Form of Sale Order* [Docket No. [●]] and attached hereto as **Exhibit 2** (the "First Amendment to Stalking Horse APA"), and any prior execution of such agreements, documents, and instruments, including the Transaction Documents, is hereby ratified, (ii) perform all obligations under the Stalking Horse APA and the Transaction Documents, to consummate each of the foregoing, including, without limitation, deeds, assignments, and other instruments of transfer, and to consummate the Sale Transaction, and any prior performance of

such obligations or any prior consummation of such Sale Transaction is hereby ratified, (iii) assume and assign the Designated Contracts to the Purchaser, and (iv) take all other and further actions as may be reasonably necessary to consummate and implement the Sale Transaction and to perform all obligations under the Stalking Horse APA and the Transaction Documents and the consummation thereof, without any further corporate action or order of this Court. The Purchaser shall not be obligated to proceed with the Closing under the Stalking Horse APA until all conditions precedent to its obligation to do so thereunder have been satisfied or waived.

5.      **No Sub Rosa Plan**. The sale of the Transferred Assets, including, without limitation, the assignment of the Designated Contracts, pursuant to the Stalking Horse APA outside a chapter 11 plan neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan. Neither the Stalking Horse APA nor the Sale Transaction constitutes a sub rosa chapter 11 plan.

6.      **Valid Transfer**. As of the Closing, the consummation of the Sale Transaction shall effect a legal, valid, and enforceable sale and transfer of the Transferred Assets to the Purchaser, and shall vest the Purchaser with all legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets free and clear of all Interests of any kind or nature whatsoever. The Stalking Horse APA and the Transaction Documents are valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms. The Stalking Horse APA, the Transaction Documents, the Sale Transaction itself, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and their respective Affiliates and subsidiaries and such parties' successors and assigns, the Debtors' estates, all creditors thereof (whether known or unknown), all holders of equity interests in any Debtor, holders of Interests in, against, or on all or any portion of the Transferred Assets, all non-

Debtor parties to the Designated Contracts, the Purchaser and its respective successors and assigns,

any chapter 11 trustee appointed in these chapter 11 cases or any chapter 7 trustee appointed upon

a conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and shall

not be subject to rejection or avoidance by the foregoing parties or any other Person.

      7.      **Free and Clear**.  Except as expressly provided for in the Stalking Horse APA or

this Sale Order, pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the

Bankruptcy Code, the Debtors are authorized and directed to transfer the Transferred Assets to the

Purchaser and, upon the Closing, other than the Purchaser's assumption of the Assumed Liabilities

and the Purchaser's obligations under the Stalking Horse APA and the Designated Contracts, the

Purchaser shall have and take title to and possession of the Transferred Assets free and clear of

and shall have no obligation with respect to all Interests (other than Permitted Liens and the

Assumed Liabilities) of any kind or nature whatsoever, including, without limitation, rights or

claims based on any successor, transferee, derivative, or vicarious liabilities; de facto merger,

continuation or continuity, or any similar theories under applicable state or federal law or

otherwise.  All holders of Interests fall within one or more of the subsections of section 363(f) of

the Bankruptcy Code and are adequately protected by having their Interests attach to the net

proceeds ultimately received by the Debtors and attributable to the Transferred Assets against or

in which such Interests are asserted, subject to the terms of such Interests, with the same validity,

force, and effect, and in the same order of priority that such Interests now have against the

Transferred Assets or their proceeds as of Closing, subject to any rights, claims, and defenses the

Debtors or their estates, as applicable, may possess with respect thereto, in addition to any

limitations on the use of such proceeds pursuant to any provision of this Sale Order; *provided*,

*however*, that setoff rights will be extinguished to the extent there is no longer mutuality of the

parties after consummation of the Sale Transaction.  This Sale Order: (a) is and shall be effective as a determination that other than Assumed Liabilities or as otherwise provided herein, upon the applicable Closing in accordance with the Stalking Horse APA, all claims of any kind or nature whatsoever existing as to acquired assets, and any tax liability, prior to the applicable Closing have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, with such Interests and liens attaching in order of priority to the proceeds of the Sale Transaction, and (b) is and shall be binding upon and shall authorize all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or unites, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Transferred Assets conveyed to the Purchaser.  All recorded Interests against the Transferred Assets from their records, official and otherwise, shall be deemed stricken upon the Closing in accordance with the Stalking Horse APA and the terms of this Sale Order. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the assets free and clear of any liens, claims, and/or interests (other than Permitted Liens and the Assumed Liabilities).

8.      Those holders of Interests or claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests or claims who did object that have an interest in the Transferred Assets fall within one or more of sections 363(f)(1), 363(f)(3), 363(f)(4), or 363(f)(5) of the Bankruptcy Code and are therefore adequately protected by having

their Interests or claims that constitute interests in the Transferred Assets, if any, attach solely to

the proceeds of the Sale Transaction ultimately attributable to the property in which they have an

interest, in the same order of priority and with the same validity, force, and effect that such holders

had prior to the Sale Transaction, subject to any defenses of the Debtors.

9.     **Release of Interests**.  Any and all Persons that have filed a financing statement,

mortgage, mechanic's lien, *lis pendens*, or other document or agreement evidencing an Interest

against or in the Transferred Assets shall deliver to the Debtors prior to the Closing, in proper form

for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases, and/or any other similar documents necessary for the purpose of

documenting all Interests that such Person has against or in the Transferred Assets.  For any Person

who has not delivered such termination statements to the Debtors prior to the Closing, then with

respect to the holders of the Prepetition Liens, so long as the proceeds of the Sale Transaction shall

have attached to the Prepetition Liens in the same order of priority as among such Prepetition Liens

that existed prior to the Sale Transaction and with such Prepetition Liens retaining the same

validity, force, and effect such Prepetition Liens had prior to the Sale Transaction, (i) the Debtors

and/or the Purchaser are hereby authorized to execute and file such statements, instruments,

releases, and/or other similar documents on behalf of such Person with respect to the Transferred

Assets, (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy

of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive

evidence of the release of all Interests of any kind or nature against or in the Transferred Assets,

and (iii) the Purchaser may seek in this Court, or any other court of appropriate jurisdiction, to

compel the appropriate parties to execute termination statements, instruments of satisfaction,

releases, and/or other similar documents with respect to all Interests that such Person has against

or in the Transferred Assets.  This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Transferred Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

10.    **Surrender of Acquired Assets**.  All Persons that are presently or on the Closing Date may be in possession of some or all of the Transferred Assets are directed to surrender possession of such acquired assets to the Purchaser as of the Closing Date.

11.    **Continuation of Existing Approvals**.  The Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Transferred Assets (subject, in each case, to the terms of the Stalking Horse APA), and all such licenses, permits, registrations, and governmental authorizations or any other approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  All existing licenses or permits applicable to the business shall remain active, in place, and, as applicable, shall be renewed for the Purchaser's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.  To the maximum extent permitted by section 525(a) of the Bankruptcy Code, no governmental unit (as defined in Bankruptcy Code § 101(27)) or any representative thereof may revoke or suspend, or in any way challenge or fail to consent to any renewal of any permit or license relating to the operation of the

Transferred Assets because of the filing or pendency of the Debtors' chapter 11 cases or the

consummation of the Sale Transaction.

12.     **Injunction**. All Persons are hereby prohibited and enjoined from taking any action

that would adversely affect or interfere with, or that would be inconsistent with, the ability of the

Debtors to sell and transfer the Transferred Assets to the Purchaser in accordance with the terms

of the Stalking Horse APA, the Transaction Documents, or this Sale Order.  Except as expressly

permitted by the Stalking Horse APA with respect to Permitted Liens and Assumed Liabilities or

this Sale Order, all Persons (and their respective successors and assigns), including, without

limitation, all holders of claims or Interests, lenders, debt security holders, governmental, tax and

regulatory authorities, parties to executory contracts and unexpired leases, creditors, contract

counterparties, customers, landlords, licensors, employees and former employees, litigation

claimants, pension plans, labor unions, trade creditors, and other Persons holding Interests of any

kind or nature whatsoever against or in the Debtors or the Transferred Assets (whether known or

unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or

unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement

of the Debtors' chapter 11 cases, whether imposed by agreement, understanding, law, equity, or

otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the

operation of the Debtors' businesses prior to the Closing, the Transferred Assets, or the transfer of

the Transferred Assets to the Purchaser (including, without limitation, any rights or claims based

on any successor, transferee, derivative, or vicarious liabilities), shall be and hereby are forever

barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any

Interests against the Purchaser, any of its Affiliates, officers, directors, members, partners,

principals, or shareholders, any of their respective representatives, successors, designees, or

assigns, the property of the foregoing, and the Transferred Assets transferred to the Purchaser or interests of the Debtors in such acquired assets (other than Permitted Liens and the Assumed Liabilities). Following the Closing, no holder of an Interest against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' former interests in the Transferred Assets, including, without limitation, taking any of the following actions with respect to or based on any Interest relating to the Transferred Assets or the transfer of the Transferred Assets to the Purchaser (other than Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against the Purchaser or its successors or assigns, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser or its successor, or assigns, assets, or properties; (c) creating, perfecting, or enforcing any Interest against the Purchaser, its successors or assigns, assets (including the Transferred Assets), or properties; (d) asserting any Interest as a setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors or assigns: (e) commencing or continuing any action in any manner or place that does not comply or is inconsistent with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof; (f) interfering with, preventing, restricting, prohibiting, or otherwise enjoining the consummation of the Sale Transactions; or (g) enforcing any provision of any Designated Contract that prohibits, restricts or conditions, or which purports to terminate or modify, or permits a party other than the Debtors to terminate or modify, any such Designated Contract, or any right or obligation under such Designated Contract, because of the assumption and assignment of such Designated Contract by the Seller to the Purchaser. For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Sale Order, any provision in a Designated Contract, any other document,

or any applicable law that prohibits, restricts, or otherwise impairs assignment of the Designated
Contracts or the Purchaser's ability to utilize the Transferred Assets in Purchaser's business is
hereby void and of no force and effect with respect to the Sale Transaction, including without
limitation any provision that (a) terminates or modifies any right or obligation of the Purchaser
under such Designated Contract; (b) cross-defaults to or from any other lease or executory contract
that is not a Designated Contract; (c) contains operating covenants or "go-dark" provisions that
would purport to terminate or modify any Designated Contract before assumption and assignment
to the Purchaser; (d) requires a third party's consent prior to assignment of the Designated Contract
to the Purchaser; or (e) restricts the Purchaser's use or assignment of any licenses or similar permits
if transferred.  Notwithstanding the foregoing or any other provision of this Sale Order or the
Stalking Horse APA to the contrary, solely with respect to post-Closing claims (and for the
avoidance of doubt, other than with respect to pre-Closing claims or defaults or defaults and/or
any claims that arise as a result of the Sale Transaction), the transfer of the Transferred Leases and
related acquired assets to the Purchaser shall not impair in any respect, the rights of any
counterparties to the Transferred Leases, if any, to assert any setoff or recoupment rights or other
affirmative defenses under applicable law, including, but not limited to, the right, if any, of such
counterparties to the Transferred Leases to setoff or recoup a security deposit held pursuant to the
terms of the Transferred Leases and subject to the Purchaser's and any of their affiliates' and
successors', as applicable, right to contest any such right(s) of setoff or recoupment; *provided*,
further, that any setoff or recoupment or affirmative defenses with respect to pre-Closing claims
or cure defaults or defaults and/or any claims that arise as a result of the Sale Transaction shall
only be asserted against the Debtors, subject to the Debtors' right to contest any such right(s) of
setoff or recoupment or affirmative defenses.

13.   **General Assignment**.  As of the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Transferred Assets and/or a bill of sale or assignment transferring indefeasible title and interest in the Transferred Assets, including the Designated Contracts, to the Purchaser.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction and to reflect the effectiveness of the Sale Transaction.

14.   **No Successor, Transferee, or Similar Liability**.  The Purchaser, its Affiliates, and any of their respective officers, directors, members, partners, principals, employees, independent contractors, and shareholders (or equivalent) and any of their respective representatives, agents, predecessors, successors, or assigns shall not be and shall not be deemed, as a result of the consummation of the Sale Transaction or otherwise, (i) to be a successor of, successor employer of, successor entity of, to have successorship obligations relating to, or to otherwise be deemed a successor, to the Debtors or the Debtors' estates, including with respect to any labor, employment, employee, personnel, or worker related matter, law, or agreement, including any collective bargaining agreement, works council agreement, union agreement, area labor agreement, multiemployer agreement, project labor agreement, construction agreement, contractor agreement, building agreement, regional agreement, work standards agreement, or other labor Contract (collectively, a "Collective Bargaining Agreement"), any employee benefit plans, any defined benefit pension plan, or any multiemployer plans, and the Purchaser and/or its Affiliates, as applicable, shall instead be, and be deemed to be, a new employer, including with respect to, among other things, any and all federal or state unemployment laws, including the Fair Labor Standards Act, any employee wage and hour law, privacy law, worker classification law, minimum

wage law, overtime law, compensation or benefit law, meal or rest break law, time keeping law,

employee record or documentation law, workers compensation law, unemployment compensation

or tax law, or any other similar federal or state law (provided that the Purchaser shall pay

employee-related liabilities solely to the extent expressly included in the Assumed Liabilities);

(ii) to have any common law successorship liability in relation to any Collective Bargaining

Agreement, union, multiemployer organization, employee benefit plan, or multiemployer plan,

including with respect to withdrawal liability or contribution obligations; (iii) to have, de facto or

otherwise, merged or consolidated with or into any of the Debtors or any of the Debtors' estates,

(iv) to be the successor of or a successor employer (as defined under COBRA and applicable

regulations thereunder, common law, or otherwise) to the Debtors; (v) to have a common identity

with the Debtors; (vi) to be an alter ego, joint employer, single employer, a continuation or

substantial continuation, or to be holding itself out as a mere continuation, of any of the Debtors

or their respective estates, or any enterprise of any of the Debtors, (vii) to be liable for any acts or

omissions of the Seller or Debtors in connection with any Collective Bargaining Agreement,

personnel, worker, employee, independent contractor, the conduct of the business, or the operation,

funding, or administration of the employee benefit plans or multiemployer plans or arising under

or related to the Transferred Assets other than as expressly set forth in the Stalking Horse APA;

(viii) to have any successor liability, transferee liability, derivative liability, vicarious liability, or

any similar theories of any kind or character including, without limitation, under any theory of

foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee or

transferee liability, labor, product liability, employment, de facto merger, substantial continuity,

or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date,

whether now existing or hereafter arising, whether asserted or unasserted, fixed or contingent,

liquidated or unliquidated; (ix) except as expressly set forth in the Stalking Horse APA, to have

any successor liability, transferee liability, derivative, liability, vicarious liability, or any similar

theories of any kind or character including under any pending, threatened, or potential claim,

litigation, arbitration, settlement, investigation, fact circumstance, or event disclosed in the

Transaction Documents; in each case whether known or unknown as of the Closing Date, whether

now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated

or unliquidated, except to the extent solely and expressly provided for in the Stalking Horse APA.

The Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any

liability or obligation of any of the Debtors and/or their respective estates, or any of their

predecessors or Affiliates.  The so-called "bulk sales," "bulk transfer," or other similar laws shall

be waived in all necessary jurisdictions, including those relating to Taxes.  Except as expressly set

forth in the Stalking Horse APA with respect to Assumed Liabilities, the Purchaser, its Affiliates,

officers, directors, members, partners, principals, and shareholders (or equivalent) and any of their

respective representatives, successors, or assigns, or the Transferred Assets shall have no liability

or responsibility whatsoever with respect to, or be required to satisfy in any manner, whether at

law or in equity, whether by payment, setoff or otherwise, directly or indirectly (w) any Interest

against the Debtors or against an insider of the Debtors, (x) any Interest or Excluded Liabilities,

(y) the Debtors except as expressly set forth in the Stalking Horse APA and the Transaction

Documents. Notwithstanding anything contained herein or the Stalking Horse APA to the contrary,

the Purchaser shall be bound by and comply with all of the provisions of the Transferred Leases,

except as otherwise provided in this Sale Order or applicable law.

     15.    **Good Faith of the Purchaser**. The Sale Transaction specified in the Stalking

Horse APA is undertaken by the Purchaser without collusion and in good faith, as that term is

defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification

on appeal of the authorization provided herein to consummate the sale shall not affect the validity

of the Sale Transaction, including, without limitation, the assumption and assignment of the

Designated Contracts, unless such authorization and consummation of the sale are duly and

properly stayed pending such appeal.  The Purchaser is a good faith purchaser within the meaning

of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section

363(m) of the Bankruptcy Code.

16.    **No Avoidance of Stalking Horse APA**.  Neither the Debtors nor the Purchaser

have engaged in any conduct that would cause or permit the Stalking Horse APA to be avoided or

costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the

Stalking Horse APA and the Sale Transaction shall not be avoidable under section 363(n) of the

Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to

section 363(n) of the Bankruptcy Code in respect of the Stalking Horse APA or the Sale

Transaction.  Specifically, the Purchaser has not acted in a collusive manner with any person or

entity and the purchase price was not controlled by any agreement among bidders.

17.    **Cure and Cure Dispute Resolution**.  All defaults or other obligations of the

Debtors under the Designated Contracts arising prior to the Closing (without giving effect to any

acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the

Bankruptcy Code) as to which no objections were interposed and remain pending as of the date of

this Order are deemed satisfied by the payment of the proposed amount necessary, if any, to cure

all monetary defaults, if any, under such Designated Contract or Transferred Lease in those

amounts set forth in the Assignment Notice, which was served in compliance with the Bid

Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable.  For all

34

Designated Contracts and Transferred Leases for which an Assignment Notice was served, the Purchaser is authorized and directed to pay all Cure Amounts required to be paid by such parties upon the later of (a) the Closing, or (b) for any Designated Contract for which an objection has been filed to the assumption and assignment of such agreement or the Cure Amounts relating thereto and such objection remains pending as of the date of this Order (a "Cure Dispute"), within ten (10) business days of the resolution of such objection by settlement or order of this Court. Any non-Debtor counterparty to a Designated Contract that has not filed an objection on or before the deadline as set forth in the relevant Assignment Notice, or received an informal extension by the Debtors, shall be barred from objecting or asserting monetary or non-monetary defaults with respect to any such Designated Contract or Transferred Lease other than the applicable amount set forth in the Assignment Notice, and such Designated Contract shall be deemed assumed by the Debtors and assigned to the Purchaser on the Closing Date. To the extent that any Cure Dispute cannot be consensually resolved by the applicable parties, whether before or after the Closing Date, such Designated Contracts shall be assumed and assigned only upon satisfactory resolution of the Cure Dispute, to be determined in the Stalking Horse Purchaser's reasonable discretion. To the extent a Cure Dispute exists, the Designated Contracts may be conditionally assumed and assigned, subject to the consent of the Purchaser, pending a resolution of the Cure Dispute by agreement of the parties or after notice and a hearing. If a Cure Dispute is not satisfactorily resolved, the Purchaser may determine that such Designated Contracts should not be included on their schedule of Designated Contracts and should be rejected and not assigned, in which case the Purchaser will not be responsible for any Cure Amounts to the contract counterparty. The Debtors may then seek to reject the applicable contract or lease pursuant to Section 365 of the Bankruptcy Code.

18.    **Determination of Cure Amounts**.  Unless a counterparty to any Designated

Contract has filed a timely Cure Objection which remains subject to an unresolved Cure Dispute

as of the entry of this Sale Order, the Cure Amounts set forth on the Assignment Notices shall

constitute findings of this Court and shall be final and binding on the counterparties to the

Designated Contracts and their successors and designees upon the Closing and shall not be subject

to further dispute or audit based on performance prior to the time of assumption and assignment,

irrespective of the terms and conditions of such Designated Contracts.  Each counterparty to a

Designated Contract (other than a counterparty who filed a timely Cure Objection) shall be forever

barred, estopped, and permanently enjoined from (i) asserting against the Purchaser or its property

(including, without limitation, the Transferred Assets), any default arising prior to or existing as

of the Closing, or any counterclaim, defense, recoupment, setoff, or any other Interest asserted or

assertable against the Debtors (except as otherwise provided herein), and (ii) imposing or charging

against the Purchaser or its Affiliates, any accelerations, assignment fees, increases, or any other

fees or charges as a result of the Debtors' assumption and assignment to the Purchaser of the

Designated Contracts in connection with the Sale Transaction approved by this Sale Order. To the

extent a counterparty to any of the Designated Contracts received notice of the Debtors' proposed

Cure Amount and fails to file a Cure Objection by the applicable deadline, such party shall be

deemed to have (a) consented to the assumption and assignment of the applicable Designated

Contract and the payment of the Cure Amount provided in the Assignment Notices and (b) waived

any right to assert or collect any other cure amount or enforce any default that may arise or have

arisen prior to or as of the Closing.

19.    **Payment of Cure Amounts**.  With respect to the Designated Contracts, to the

extent there are any Cure Amounts unpaid as of the Closing Date, the Purchaser shall be obligated,

and is hereby directed, to pay or cause to be paid such Cure Amounts, unless a Cure Amount is subject to an unresolved Cure Dispute, in which case the Purchaser shall pay the Cure Amount in accordance with Paragraph 17 above, or unless the Debtors are otherwise required under applicable law to make such payments prior to the Closing, in which case the Debtors shall obtain both the Prepetition Term Loan Administrative Agent and the Purchaser's written consent before making such payments and Purchaser shall reimburse the Debtors for such amounts paid by the Debtors, provided that the Purchaser shall receive a credit to the purchase price for any such Cure Amounts. The Purchaser's promise to perform the obligations under the Designated Contracts arising after their assumption and assignment to the Purchaser shall constitute adequate assurance of future performance within the meaning of sections 365(b) and 365(f)(2) of the Bankruptcy Code. Subject in all respects to the Stalking Horse APA, commencing on the Closing Date, with respect to the Transferred Leases, the Purchaser in the ordinary course shall pay any unpaid monthly payments for the month in which the Closing occurs. On the Closing Date, subject in all respects to the terms of this Sale Order, the Purchaser shall be deemed to be substituted for the Seller (and/or any other Debtor, to the extent it holds any rights, title, or interests in any of the Designated Contracts) as a party to the applicable Designated Contracts.

20.     **Ipso Facto Clauses Ineffective**. Upon the Debtors' assumption and assignment of the Designated Contracts to the Purchaser pursuant to this Sale Order and the payment of the Cure Amounts in accordance with this Sale Order and the Stalking Horse APA, no default shall exist under any Designated Contract and no counterparty to any such Designated Contract shall be permitted to declare or enforce a default by the Debtors or the Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, change in control, bankruptcy, or failure to perform any of its obligations under the applicable Designated Contract.

37

For the avoidance of doubt, and without limiting the generality of the foregoing or the operability of any other relief obtained pursuant to this Sale Order, any provision in a Designated Contract that prohibits or conditions, whether directly or indirectly, the assignment of such Designated Contract (including, without limitation, the granting of an Interest therein) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment shall be deemed an unenforceable anti-assignment provision that is void and of no force and effect with respect to the Sale Transaction as approved by this Sale Order.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Designated Contract shall not be a waiver of such terms or conditions or of the Debtors' or the Purchaser's right, as applicable, to enforce every term and condition of such Designated Contract.

21.     **Binding Effect**.  This Sale Order and the Stalking Horse APA shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Transferred Assets.  The terms and provisions of the Stalking Horse APA, the Transaction Documents, the Bid Procedures Order, and this Sale Order shall be binding in all respects upon the Debtors and their respective Affiliates and subsidiaries and such parties' successors and assigns, the Debtors' estates, all creditors thereof (whether known or unknown), all holders of equity interests in any Debtor, holders of Interests in, against, or on all or any portion of the

Transferred Assets, all non-Debtor parties to the Designated Contracts, the Purchaser and its respective successors and assigns, and any and all third parties, notwithstanding any subsequent appointment of any trustee, examiners, "responsible persons" or other fiduciaries (collectively, the "Trustee") of the Debtors under any chapter of the Bankruptcy Code, as to which Trustee such terms and provisions likewise shall be binding, and the Stalking Horse APA (including the Designated Contracts) shall not be subject to rejection or avoidance under any circumstances.

22.    **Release, Discharge, and Termination of Interests**.  This Sale Order shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing prior to the Closing have been unconditionally released, discharged, and terminated as to the Transferred Assets (other than Permitted Liens and the Assumed Liabilities), and that the conveyances described herein have been effected.

23.    **No Material Modifications**.  The Stalking Horse APA and the Transaction Documents may be modified, amended, or supplemented by the Debtors and the Purchaser, in a writing signed by such parties, and in accordance with the terms thereof, without further order of this Court; *provided*, that (i) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or its creditors, and (ii) has been agreed to between the Debtors and the Purchaser (with such consent not to be unreasonably withheld) and approved by the Prepetition Term Loan Administrative Agent.  Any material modification, amendment, or supplement to the Stalking Horse APA and the Transaction Documents adversely affecting the Debtors' estates must be approved by order of this Court following a motion on notice to all interested parties.

24.    **Subsequent Orders and Plan Provisions**.    Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or any subsequent order of this Court,

including, without limitation, any order confirming any such chapter 11 plan, any order authorizing

the sale of assets of the Debtors pursuant to any section of the Bankruptcy Code, and any order

approving wind-down or dismissal of any Debtor's chapter 11 case or any subsequent

chapter 7 case shall change, supersede, abrogate, nullify, restrict, or conflict with the provisions of

the Stalking Horse APA, the Transaction Documents, or this Sale Order, or in any way prevent or

interfere with the consummation or performance of the Sale Transaction.

25.    **Failure to Specify Provisions**.  The failure to specify or include any particular

provisions of the Stalking Horse APA or the Transaction Documents in this Sale Order shall not

diminish or impair the effectiveness of such provisions, it being the intent of this Court that the

Stalking Horse APA, the Transaction Documents, and the Sale Transaction be authorized and

approved in their entirety.

26.    **Automatic Stay**.   The automatic stay pursuant to section 362 of the

Bankruptcy Code is hereby lifted solely to the extent necessary to (i) allow the Purchaser to deliver

any notice provided for in the Stalking Horse APA and the Transaction Documents, and (ii) allow

the Purchaser to take any and all actions permitted under the Stalking Horse APA and the

Transaction Documents in accordance with the terms and conditions thereof.  The automatic stay

imposed by section 362 of the Bankruptcy Code shall be modified solely to the extent necessary

to implement the preceding sentence, and this Court shall retain exclusive jurisdiction over any

and all disputes with respect thereto.

27.    **Bankruptcy Rules Satisfied or Waived**.   The requirements set forth in

Bankruptcy Rules 6004 and 6006 have been satisfied or are otherwise deemed to be waived.  As

provided by Bankruptcy Rule 9014, the terms of this Sale Order shall be effective and enforceable

immediately upon entry, and shall not be subject to stay provisions contained in Bankruptcy Rules

6004(h) and 6004(d).  Time is of the essence in closing the Sale Transaction and the Debtors and

the Purchaser intend to close the sale as soon as possible.

28.    **Conflicts Between Sale Order and Stalking Horse APA**.  To the extent anything

contained in this Sale Order conflicts with a provision in the Stalking Horse APA or Transaction

Documents, this Sale Order shall govern and control.  Notwithstanding the foregoing, nothing in

this Sale Order shall modify or waive any closing conditions or termination rights in the Stalking

Horse APA, and all such conditions and rights shall remain in full force and effect in accordance

with their terms.

29.    **Provisions Nonseverable and Mutually Dependent**.  The provisions of this Sale

Order, the Stalking Horse APA, and the Transaction Documents are non-severable and mutually

dependent.

30.    **Retention of Jurisdiction**.  This Court shall retain exclusive jurisdiction to, among

other things, interpret, implement, and enforce the terms and provisions of the Stalking Horse

APA, the Transaction Documents, the Bid Procedures Order, and this Sale Order, and each of the

agreements executed in connection therewith to which the Debtors are a party or which has been

assigned to the Purchaser by the Debtors, and to adjudicate, if necessary, any and all disputes

concerning or relating in any way to the Sale Transaction.  This Court retains jurisdiction to compel

delivery of the Transferred Assets, to protect the Purchaser and its assets, including the Transferred

Assets, against any Interests or successor or transferee liability and to enter orders, as appropriate,

pursuant to sections 105(a), 363, or 365 (or other applicable sections) of the Bankruptcy Code

necessary to transfer the Transferred Assets and the Designated Contracts to the Purchaser.  In the

event this Court abstains from exercising or declines to exercise jurisdiction with respect to any

matter referenced in this paragraph or is without jurisdiction, such abstention, refusal, or lack of

jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

31.     The distribution of the proceeds from the Sale Transaction shall be subject to the terms of paragraph 28 of the Final Cash Collateral Order, and the Debtors are authorized and directed to use the proceeds of the Sale Transaction received by the Debtors in accordance therewith.

32.     The Purchaser has standing to seek to enforce any terms of this Sale Order, the Bid Procedures Order, the Stalking Horse APA, and the Transaction Documents in this Court or any other court with competent jurisdiction.

33.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

# # # END OF ORDER # # #

Submitted By:

**SIDLEY AUSTIN LLP**

Samuel A. Newman (admitted *pro hac vice*)
555 West Fifth Street
Los Angeles, California 90013
Telephone:     (213) 896-6000
Facsimile:     (213) 896-6600
Email:         sam.newman@sidley.com

Rakhee V. Patel (TX Bar No. 00797213)
Nathan C. Elner (admitted *pro hac vice*)
Parker G. Embry (TX Bar No. 24126826)
Chelsea M. McManus (TX Bar No. 24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         rpatel@sidley.com
               nelner@sidley.com
               parker.embry@sidley.com
               cmcmanus@sidley.com

Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, IL 60603
Telephone:     (312) 853-7000
Facsimile:     (312) 853-7036
Email:         jgarvey@sidley.com

*Counsel to the Debtors and Debtors in Possession*

## Exhibit 1

**Stalking Horse APA**

## Exhibit 2

**First Amendment to Stalking Horse APA**