SIDLEY AUSTIN LLP
Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars
Los Angeles, California 90071
Telephone:      (310) 595-9500
Facsimile:       (310) 595-9501
Email:            sam.newman@sidley.com

SIDLEY AUSTIN LLP
Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, IL 60603
Telephone:      (312) 853-7000
Facsimile:       (312) 853-7036
Email:            jgarvey@sidley.com

SIDLEY AUSTIN LLP
Rakhee V. Patel (TX Bar No. 00797213)
Nathan C. Elner (admitted *pro hac vice*)
Parker G. Embry (TX Bar No. 24126826)
Chelsea M. McManus (TX Bar No. 24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:      (214) 981-3300
Facsimile:       (214) 981-3400
Email:            rpatel@sidley.com
                    nelner@sidley.com
                    parker.embry@sidley.com
                    cmcmanus@sidley.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| IMPEL PHARMACEUTICALS INC., *et al*.[1] | Case No. 23-80016 (SGJ) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MEMORANDUM OF**
**LAW IN SUPPORT OF CONFIRMATION OF THE**
**REVISED FIRST AMENDED JOINT PLAN OF LIQUIDATION OF IMPEL**
**PHARMACEUTICALS INC. AND IMPEL NEUROPHARMA AUSTRALIA PTY LTD**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are:  Impel Pharmaceuticals Inc. (8238); and Impel NeuroPharma Australia Pty Ltd (N/A).  The Debtors' service address is 280 Park Avenue, New York, New York 10017.

## TABLE OF CONTENTS

Preliminary Statement...................................................................................................... 1

Argument ......................................................................................................................... 2

Case Background ............................................................................................................. 2

   I.   Procedural History ................................................................................................ 2

   II.   Plan Solicitation and Notification Process............................................................ 5

APPROVAL OF THE DISCLOSURE STATEMENT IS WARRANTED ..................... 6

   I.   The Disclosure Statement Contains Adequate Information................................... 6

   II.   The Solicitation Procedures Complied with the Bankruptcy Code and Bankruptcy Rules .................................................................................................................... 8

   III.   Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith...... 8

The Plan Satisfies Section 1129 of the Bankruptcy Code ............................................... 9

   I.   The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ................. 9

      A.  The Plan Properly Classifies Creditors' Claims Under Section 1122 of the Bankruptcy Code ........................................................................................ 10

      B.  The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code ........................................................................................ 11

      C.  The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code ........................................................................................ 14

   II.   The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code ............... 24

      A.  The Debtors Complied with Section 1125 of the Bankruptcy Code ........... 24

      B.  The Debtor Complied with Section 1126 of the Bankruptcy Code ............ 25

   III.   The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code ................................................................... 26

   IV.   The Plan Provides that the Payment of Debtors' Professional Fees and Expenses Are Subject to Court Order in Compliance with Section 1129(a)(4) ..................... 27

      V.  The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, or Insiders and Therefore Complies with Section 1129(a)(5) .......................... 27

   VI.   The Plan Does Not Require Governmental Regulatory Approval and Therefore Complies with Section 1129(a)(6) ....................................................................... 28

   VII.   The Plan Is in the Best Interest of Creditors and Therefore Complies with Section 1129(a)(7) ......................................................................................................... 28

      VIII.    The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code ................................................................... 30

   IX.   The Plan Provides for Payment in Full of All Allowed Priority Claims in Compliance with Section 1129(a)(9) of the Bankruptcy Code ............................................ 30

X.      At Least One Class of Impaired, Non-Insider Claims Accepted the Plan in
        Compliance with Section 1129(a)(10) of the Bankruptcy Code.......................................... 31

XI.     The Plan Is Feasible in Compliance with Section 1129(a)(11) of the Bankruptcy
        Code ................................................................................................................................. 32

        XII.      All Statutory Fees Have or Will Be Paid in Compliance with Section
        1129(a)(12) ...................................................................................................................... 33

XIII.   The Debtor Has No Retiree Benefit Obligations (Section 1129(a)(13)) ......................... 34

XIV.    Sections 1129(a)(14), (a)(15) and (a)(16) Do Not Apply to the Plan.............................. 34

XV.     The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the
        Bankruptcy Code ............................................................................................................. 34

        XVI.      The Debtor Complied with Sections 1129(d) and (e) of the Bankruptcy
        Code      ............................................................................................................................ 36

XVII.   Modifications to the Plan ................................................................................................ 37

XVIII.  Good Cause Exists to Waive the Stay of the Proposed Confirmation Order.................. 38

Conclusion ................................................................................................................................. 38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ad Hoc Grp. of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*,
   701 F.3d 1031 (5th Cir. 2012) .............................................................................18

*Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*,
   203 F.3d 914 (5th Cir. 2000) ..........................................................................18, 19

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
   526 U.S. 434 (1999)........................................................................................29, 36

*Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*,
   584 F.3d 229 (5th Cir. 2009) ..........................................................................18, 21

*Baron v. Sherman (In re Ondova Ltd.)*,
   914 F.3d 990 (5th Cir. 2019) .............................................................................22

*Feld v. Zale Corp. (In re Zale Corp.)*,
   62 F.3d 746 (5th Cir. 1995) .............................................................................18

*Financial Sec. Assur. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,
   116 F.3d 790 (5th Cir. 1997) ...........................................................................9, 26

*Floyd v. Hefner*,
   No. CIV.A. H-03-5693, 2006 WL 2844245 (S.D. Tex. Sept. 29, 2006) ...................7

*FOM Puerto Rico, S.E. v. Dr. Barnes Eyecenter, Inc.*,
   255 Fed. App'x 909 (5th Cir. 2007) ..............................................................18, 19

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*,
   994 F.2d 1160 (5th Cir. 1993), *cert. denied*, 510 U.S. 92 (1993)...........................9

*Hernandez v. Larry Miller Roofing, Inc.*,
   628 Fed. App'x 281 (5th Cir. 2016) ...............................................................18, 19

*In re 203 N. LaSalle St. Ltd. P'ship.*,
   190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, Bank of Am.,
   526 U.S. 434 (1999).........................................................................................35

*In re Adelphia Commc'ns Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...................................................................................29

*In re AiBUY Holdco Inc.*,
   Case No. 22-31737 (SGJ) (Bankr. N.D. Tex. Nov. 15, 2022) [Docket No. 203]...................20

*In re Aleris Int'l, Inc.*,
   2010 WL 3492664 (Bankr. D. Del. May 13, 2010) [Docket No. 203]............................24, 35

*In re Am. Solar King Corp.*,
   90 B.R. 808 (Bankr. W.D. Tex. 1988) ...................................................................................37

*In re Ambanc La Mesa L.P.*,
   115 F.3d 650 (9th Cir. 1997) ................................................................................................35

*In re Applegate Prop., Ltd.*,
   133 B.R. 827 (Bankr. W.D. Tex. 1991) ...............................................................................6, 7

*In re Bigler LP*,
   442 B.R. 537 (Bankr. S.D. Tex. 2010) ..................................................................................15

*In re Block Shim Dev. Company-Irving*,
   939 F.2d 289 (5th Cir. 1991) ................................................................................................26

*In re Camp Arrowhead, Ltd.*,
   451 B.R. 678 (Bankr. W.D. Tex. 2011) .................................................................................18

*In re Capmark Fin. Grp. Inc.*,
   No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ...............................32

*In re Chapel Gate Apartments, Ltd.*,
   64 B.R. 569 (Bankr. N.D. Tex. 1986) ...................................................................................27

*In re Christian Care Centers*,
   Case No. 22-80000 (SGJ) (Bankr. N.D. Tex. Jan. 30, 2023) [Docket No. 419] ..............17, 23

*In re Energy & Exploration Partners, Inc.*,
   No. 15 44931 (Bankr. N.D. Tex. April 21, 2016) [Docket No. 730]......................................19

*In re Federal–Mogul Global Inc.*,
   2007 Bankr. LEXIS 3940 (Bankr. D. Del. 2007) ..................................................................37

*In re Finlay Enters., Inc.*,
   No. 09-14873 JMP, 2010 WL 6580628 (Bankr. S.D.N.Y. June 29, 2010) ............................32

*In re Gen. Homes Corp.*,
   134 B.R. 853 (Bankr. S.D. Tex. 1991) .............................................................................15, 16

*In re Heritage Org., LLC,*
   375 B.R. ................................................................................................................15, 32

*In re Highland Capital Management, L.P.,*
   Case No. 19-34054 (SGJ) [Docket No. 281-1] (Bankr. N.D. Tex., Dec. 27,
   2019) ....................................................................................................................21, 22

*In re Hilal,*
   534 F.3d 498 (5th Cir. 2008) ......................................................................................22

*In re Idearc Inc.,*
   423 B.R. 138 (Bankr. N.D. Tex. 2009) ......................................................................35

*In re J.D. Mfg., Inc.,*
   No. 07-36751, 2008 WL 4533690 (Bankr. S.D. Tex. Oct. 2, 2008) .............................6

*In re Lapworth,*
   1998 WL 767456 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ...........................................24

*In re Mirant Corp.,*
   348 B.R. 725 (Bankr. N.D. Tex. 2006) ......................................................................15

*In re Neff,*
   60 B.R. 448 (Bankr. N.D. Tex. 1985), aff'd, 785 F.2d 1033 (5th Cir. 1986) ............29

*In re Northwest Senior Housing Corp.,*
   Case No. 22-30659 (MVL) (Bankr. N.D. Tex. Apr. 7, 2023) [Docket No.
   1394] .........................................................................................................................23

*In re Nutritional Sourcing Corp.,*
   398 B.R. 816 (Bankr. D. Del. 2008) ..........................................................................10

*In re Pilgrim's Pride Corp.,*
   No. 08-45664-DML-11, 2010 WL 200000 (Bankr. N.D. Tex. Jan. 14, 2010) ............18

*In re Prussia Assocs.,*
   322 B.R. 572 (Bankr. E.D. Pa. 2005) ........................................................................32

*In re S&W Enter.,*
   37 B.R. 153 (Bankr. N.D. Ill. 1984) ............................................................................9

*In re Sea Garden Motel & Apartments,*
   195 B.R. 294 (D. N.J. 1996) ......................................................................................32

*In re Senior Care Center,*
   Case No. 18-33967 (SGJ) (Bankr. N.D. Tex. Dec. 13, 2019) [Docket No.
   2375] .........................................................................................................................17

*In re Sentry Operating Co. of Texas, Inc.*,
   264 B.R. 850 (Bankr. S.D. Tex. 2001) .................................................................37

*In re Southcross Holdings, LP*,
   No. 16-20111 (Bankr. S.D. Tex. April 11, 2016) [Docket No. 191] .......................19

*In re Star Ambulance Serv.*,
   LLC, 540 B.R. 251 (Bankr. S.D. Tex. 2015) ...........................................................9

*In re Sun Country Dev., Inc.*,
   764 F.2d 406 (5th Cir. 1985) .................................................................................26

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464
   B.R. 208 (Bankr. D. Del. 2011) .............................................................................32

*In re U.S. Brass Corp.*,
   194 B.R. 420 (Bankr. E.D. Tex. 1996) .................................................................6, 8

*In re U.S. Truck Co.*,
   47 B.R. 932 (E.D. Mich. 1985) .............................................................................32

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012) ...............................................................................26, 32

*In re Wool Growers Cent. Storage Co.*,
   371 B.R. 768 (Bankr. N.D. Tex. 2007)...............................................................18, 19

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988)...................................................................................32

*Kirk v. Texaco, Inc.*,
   82 B.R. 678 (S.D.N.Y. 1988)...................................................................................7

*Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*,
   150 F.3d 503 (5th Cir. 1998) ..............................................................................7, 27

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt. L.P. (In re Highland Cap.
   Mgmt. L.P.)*,
   28 F.4th 419 (2022)............................................................................................21, 22

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
   761 F.2d 1374 (9th Cir. 1985) ................................................................................32

*Republic Supply Co. v. Shoaf*,
   815 F.2d 1046 (5th Cir. 1987) ........................................................................18, 19, 20

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*,
    844 F.2d 1142 (5th Cir. 1988) .................................................................................7

*Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.*,
    157 B.R. 100 (S.D. Tex. 1993) ...............................................................................8

**Statutes**

U.S.C. § 1123 ............................................................................................................14, 24

11 U.S.C. § 507 ..............................................................................................................30

11 U.S.C. §1103(c) .........................................................................................................21

11 U.S.C. § 1107 section 1107 .................................................................................21, 23

11 U.S.C. § 1125 ..............................................................................................................7

11 U.S.C. § 1126 ............................................................................................5, 24, 25, 26

11 U.S.C. § 1129 ..................................................................................................... *passim*

*[Remainder of page intentionally left blank]*

The debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases") submit this memorandum of law (this "Memorandum") in support of the approval of the *First Amended Disclosure Statement for Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd.* [Docket No. 254-1] (the "Disclosure Statement") and confirmation of the *Revised First Amended Joint Plan of Liquidation of Impel Pharmaceuticals Inc and its Debtor Affiliates* [Docket No. 297] (as modified, amended, or supplemented from time to time hereafter, the "Plan").[1]  As demonstrated below, the Plan satisfies the requirements of sections 1125 and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code")[2] and should be confirmed.  In support of confirmation of the Plan and in response to the *United States Trustee's Limited Objection to the Debtors' First Amended Chapter 11 Plan and Plan Supplement* [Docket No. 295] (the "Limited Objection"), the Debtors respectfully states as follows:

## **PRELIMINARY STATEMENT**

1.  Following extensive negotiations with the Prepetition Term Loan Secured Parties and certain Holders of large General Unsecured Claims, the Debtors stand poised to confirm a consensual Plan of liquidation for the Debtors.  This consensual plan comes at the culmination of an orderly and efficient chapter 11 process that saw the Debtors close the sale of substantially of the Debtors' assets and effectuate a value-maximizing Plan supported by the Debtors' largest creditors.

2.  The Plan provides for the best possible outcome for creditors and exhibits the efforts of the Debtors' directors, officers, professionals, and key stakeholders to create value for

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Proposed Confirmation Order (as defined below), as applicable.

[2] A detailed description of the Debtors, their business, and the facts and circumstances surrounding these Chapter 11 Cases, is set forth in greater detail in the *Declaration of Brandon Smith, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Proceedings* (the "First Day Declaration") [Docket No. 15].  On December 19, 2023 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases, and no statutory committee has been appointed.

the benefit of the Estates.  For the reasons stated herein and in the Declarations in Support (as defined below), the Debtors respectfully request the Court overrule the Limited Objection, approve the Plan, and enter the Proposed Confirmation Order.

## ARGUMENT

3.      This Memorandum is divided into two parts.  Part I sets forth the procedural history of these Chapter 11 Cases, including the Plan, the Disclosure Statement, and the Debtors' solicitation efforts and voting results.  Part II establishes the Plan's compliance with the applicable confirmation requirements, including that certain of the discretionary contents of the Plan such as the release provisions, are appropriate and should be approved.

4.      In further support of confirmation, the Debtors submit the following declarations (collectively, the "Declarations in Support"):

      a.      the *Declaration of Jeriad Paul of Omni Agent Solutions, Inc. Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 301] (the "Voting Report"); and

      b.      the *Declaration of Brandon D. Smith in Support of Confirmation of the Revised First Amended Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd* [Docket No. 303] (the "Smith Declaration").

5.      For the reasons stated herein and in light of the evidentiary support offered in the Declarations in Support, the Debtors respectfully request that the Court find that the Debtors have satisfied their burden under the Bankruptcy Code and confirm the Plan.

## CASE BACKGROUND

### I.      Procedural History

6.      On February 12, 2024, the Debtors filed the *Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd* [Docket No. 225] and the *Disclosure Statement for Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd* [Docket No. 223].  Additionally, on February 12, 2024, the

Debtors filed (i) the Disclosure Statement Motion[3] pursuant to which the Debtors sought conditional approval of the Disclosure Statement and the scheduling of a combined hearing for Disclosure Statement approval on a final basis and confirmation of the Plan (the "Combined Hearing") and (ii) the PSA Motion.[4]

7.      On February 25, 2024, the Debtors filed the *Notice of Filing of Amended Plan* [Docket No. 244] and the *Notice of Filing of Amended Disclosure Statement* [Docket No. 245], each attaching the Plan and Disclosure Statement as amended.

8.      On February 25, 2024, the Court held a hearing on the Disclosure Statement Motion and PSA Motion (the "Conditional Disclosure Statement Hearing"), at which the Court approved the Disclosure Statement on a conditional basis and granted certain other relief requested in the Disclosure Statement Motion.  On February 25, 2024, after the Conditional Disclosure Statement Hearing, the Debtors filed solicitation versions of the Plan and Disclosure Statement [Docket Nos. 253–54].

9.      The Court entered the Disclosure Statement Order[5] on February 27, 2024 which, in relevant part: (a) established March 27, 2024, at 4:00 p.m. (prevailing Central Time) as the deadline to object to the Plan; (b) conditionally approved the adequacy of the Disclosure Statement; (c) approved the solicitation procedures set forth in the Disclosure Statement; and (d) approved the form and manner of the Combined Notice (as defined in the Disclosure Statement Order).  The Debtors caused Omni Agent Solutions (the "Notice and Claims Agent") to serve the Solicitation Packages, Release Opt-Outs, and Combined Notice (each as defined in the Disclosure

---

[3] *See Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice; and (VI) Granting Related Relief* [Docket No. 224] (the "Disclosure Statement Motion").

[4] *See Debtors' Motion for Entry of an Order (I) Approving the Plan Support Agreement and (II) Granting Related Relief* [Docket No. 226] (the "PSA Motion").

[5] *See Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing;(II) Conditionally Approving the Disclosure Statement; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice; and (VI) Granting Related Relief* (the "Disclosure Statement Order") [Docket No. 260].

Statement Order), on or about February 29, 2024, all in accordance with the terms of the Disclosure Statement Order.  The Debtors caused the Publication Notice (as defined in the Disclosure Statement Order) to be published in *The New York Times (National Edition)* on March 1, 2024, and *The Seattle Times* on March 4, 2024.  The Court also entered the PSA Order[6] on February 27, 2024.

10.    On March 20, 2024, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 286] (the "Plan Supplement"), which included the: (a) Liquidation Analysis, (b) Schedule of Assumed Executory Contracts and Unexpired Leases, (c) Schedule of Retained Causes of Action, (d) Plan Administrator Agreement, and (e) identity of any insider to be employed by the Plan Administrator.  The Debtors caused such notice of filing of the Plan Supplement to be delivered by first-class mail and electronic mail upon all parties that have requested notice in these chapter 11 cases and the counterparties to the executory contracts and unexpired leases proposed to be assumed by the Debtors as of the Effective Date.

11.    On March 27, 2024, the Debtors filed the proposed *Notice of Proposed Confirmation Order* [Docket No. 298], which attached the proposed *Order Approving the Debtors' Amended Disclosure Statement and Confirming the Revised First Amended Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd* [Docket No. 298-1] (as such may be amended or modified from time to time thereafter, the "Proposed Confirmation Order").

12.    The deadline for all Holders of Claims and Interests entitled to vote on the Plan to cast their ballots was March 27, 2024 at 4:00 p.m. (prevailing Central Time), subject to certain extensions.  The Combined Hearing is scheduled for April 1, 2024 at 9:30 a.m. (prevailing Central Time).

---

[6] *See Order (I) Approving the Plan Support Agreement and (II) Granting Related Relief* [Docket No. 261] (the "PSA Order").

## II.    Plan Solicitation and Notification Process

13.    In compliance with the Bankruptcy Code, only Holders of Claims and Interests in Impaired Classes receiving or retaining property on account of such Claims or Interests as of the date of solicitation were entitled to vote on the Plan.[7]  Holders of Claims and Interests were not entitled to vote if their rights were Unimpaired or if their rights were Impaired and they were deemed to reject the Plan.  The following Classes of Claims and Interests were not entitled to vote on the Plan at the time of solicitation, and the Debtor did not solicit votes from Holders of such Claims and Interests:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 5 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |

14.    The Debtors solicited votes on the Plan only from Holders of Claims in Impaired Classes receiving or retaining property on account of such Claims as of the date of solicitation. The voting results, as reflected in the Voting Report, are summarized as follows:

| Total Ballots Received | | | |
|---|---|---|---|
| Accept | | Reject | |
| Number (% of Number) | Amount (% of Amount) | Number (% of Number) | Amount (% of Amount) |
| Class 3 – Prepetition Term Loan Claims | | | |
| 100 % | 100 % | 0 % | 0 % |
| Class 4 – General Unsecured Claims | | | |
| 80 % | >99.9 % | 20 % | <0.1 % |

15.    As set forth above and in the Voting Report, Holders of Claims and Interests in Classes 3 and 4 were entitled to vote to accept or reject the Plan (collectively, the "Voting

---

[7] *See* 11 U.S.C. § 1126.

Classes"). Each of these Classes voted to accept the Plan. As a direct result of the Debtors' efforts to engage its key constituencies, the Plan enjoys the support of all of the Debtors' Voting Classes.

16. As set forth in the Voting Report, Holders of Claims and Interests in all Classes were also entitled to opt-out of the definition of "Releasing Parties," as set forth in the Plan. If a Holder of a Claim or Interest opted to execute the Release Opt-Out, delivered either in conjunction with the Solicitation Packages or the Notice of Non-Voting Status Packages, as applicable, such Release Opt-Out was returned to the Notice and Claims Agent, who reflected this decision in the Voting Report. The Release Opt-Out Deadline was March 27, 2024 at 4:00 p.m. (prevailing Central Time).

17. In total, nine (9) Holders of Claims and Interests elected to opt-out of the Third-Party Releases.[8] Based on these results, along with the manner of solicitation and distribution described herein, the Debtors submit that the notice provided to all Classes adequately satisfied the requirements of the Bankruptcy Code.

18. For the reasons set forth in <u>Part II</u> herein, the Court should approve the Plan, and enter the Proposed Confirmation Order.

## **APPROVAL OF THE DISCLOSURE STATEMENT IS WARRANTED**

### I. **The Disclosure Statement Contains Adequate Information**

19. The primary purpose of a disclosure statement is to provide material information, or "adequate information," that allows parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan.[9] "Adequate information" is

---

[8] The Notice and Claims Agent additionally received three (3) Release Opt-Out forms from Holders of Claims in the Voting Classes that did not mark the Opt-Out check box.

[9] *See, e.g.*, *In re J.D. Mfg., Inc.*, No. 07-36751, 2008 WL 4533690, at *2 (Bankr. S.D. Tex. Oct. 2, 2008) ("'Adequacy' of information is a determination that is relative both to the entity (e.g. assets/business being reorganized or liquidated) and to the sophistication of the creditors to whom the disclosure statement is addressed."); *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) ("The purpose of the disclosure statement is . . . to provide enough information to interested persons so they may make an informed choice . . . ."); *In re Applegate Prop., Ltd.*, 133 B.R. 827, 831 (Bankr. W.D. Tex. 1991) ("A court's legitimate concern under Section 1125 is assuring that hypothetical reasonable investors receive such information as will enable them to evaluate for themselves what impact the information might have on their claims and on the outcome of the case . . . .").

a flexible standard, based on the facts and circumstances of each case.[10]  Courts within the Fifth Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.[11]

20.     Courts look for certain information when evaluating the adequacy of the disclosures in a proposed disclosure statement, including:

   a.     the events leading to the filing of a bankruptcy petition;

   b.     the relationship of a debtor with its affiliates;

   c.     a description of the available assets and their value;

   d.     the anticipated future of the company;

   e.     the source of information stated in the disclosure statement;

   f.     the present condition of a debtor while in chapter 11;

   g.     the claims asserted against a debtor;

   h.     the estimated return to creditors under a chapter 7 liquidation;

   i.     the future management of a debtor;

   j.     the chapter 11 plan or a summary thereof;

   k.     the financial information, valuations, and projections relevant to the claimant's decision to accept or reject the chapter 11 plan;

   l.     the information relevant to the risks posed to claimants under the plan;

   m.     the actual or projected realizable value from recovery of any causes of action or avoidance actions;

---

[10] 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records."); *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, both the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of the case.") (internal citations omitted); *Floyd v. Hefner*, No. CIV.A. H-03-5693, 2006 WL 2844245, at *30 (S.D. Tex. Sept. 29, 2006) (noting that what constitutes "adequate information" is a flexible standard); *In re Applegate Prop., Ltd.*, 133 B.R. at 829 ("The issue of adequate information is usually decided on a case by case basis and is left largely to the discretion of the bankruptcy court.").

[11] *See, e.g.*, *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a).").

      n.     the litigation likely to arise in a nonbankruptcy context; and

      o.     the tax attributes of a debtor.[12]

21.     The Disclosure Statement contains adequate information and was previously approved on a conditional basis on February 27, 2024.[13]  The Disclosure Statement contains descriptions and summaries of, among other things:  (a) the chapter 11 process; (b) a summary of the treatment of Claims and Interests, including projected recoveries at the time of solicitation; (c) the solicitation and voting procedures; (d) the history, operations, and capital structure of the Debtors; (e) prepetition litigation filed against the Debtors; (f) the events leading to the filing of these Chapter 11 Cases; (g) material events during the Chapter 11 Cases; (h) key terms of the Plan; (i) risk factors affecting the Plan; and (j) federal tax law consequences of the Plan.

22.     In light of the foregoing, the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

**II.    The Solicitation Procedures Complied with the Bankruptcy Code and Bankruptcy Rules**

23.     In addition to conditionally approving the adequacy of the Disclosure Statement, the Disclosure Statement Order granted relief regarding solicitation and noticing procedures including, among other things: (a) approving the solicitation and voting procedures; (b) approving the notice of Combined Hearing; (c) approving the Ballots; (d) approving the Release Opt-Out form; and (e) approving certain dates and deadlines with respect to the Plan and the Disclosure Statement.  The Debtors have complied with the procedures and timeline approved by the Disclosure Statement Order in these Chapter 11 Cases.

**III.    Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith**

24.     Section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions

---

[12] *See In re U.S. Brass Corp.*, 194 B.R. at 424–25; *Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement).

[13] *See* Disclosure Statement Order [Docket No. 260].

of this title . . . is not liable[] on account of such solicitation . . . for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan . . . ."[14] The Debtors at all times took appropriate actions in connection with the solicitation of the Plan and in compliance with section 1125 of the Bankruptcy Code. Accordingly, the Court should grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

### THE PLAN SATISFIES SECTION 1129 OF THE BANKRUPTCY CODE

25.    To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[15] As set forth herein, the Plan fully complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, and 1129—as well as the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable non-bankruptcy law.

**I.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code**

26.    Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."[16] The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively.[17] As explained below, the Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as other applicable provisions.

---

[14] 11 U.S.C. § 1125(e).

[15] *See Financial Sec. Assur. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997) ("The standard of proof required by the debtor to prove a Chapter 11 plan's [section 1129(a)(11)] feasibility is by a preponderance of the evidence . . .") (citation omitted); *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993), *cert. denied*, 510 U.S. 92 (1993) ("The combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard for proof both under § 1129(a) and in a cramdown.") (footnote omitted); *In re Star Ambulance Serv.*, LLC, 540 B.R. 251, 259 (Bankr. S.D. Tex. 2015) ("As the proponent of the Plan, the Debtor must establish by a preponderance of the evidence that each of the confirmation requirements set forth in Bankruptcy Code [section] 1129 has been met.") (citation omitted).

[16] 11 U.S.C. § 1129(a)(1).

[17] S. Rep. No. 95-989, at 126, reprinted in 1978 U.S.C. C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at 412, reprinted in 1978 U.S.C. C.A.N. 5963, 6368 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the

A.    **The Plan Properly Classifies Creditors' Claims Under Section 1122 of the Bankruptcy Code**

27.    The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class.[18]

28.    The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places the Claims and Interests into six (6) separate Classes, with Claims and Interests in each Class differing from the Claims and Interests in each other Class in a legal or factual manner, or based on other relevant criteria.  Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

a.    <u>Class 1</u>: Other Secured Claims;

b.    <u>Class 2</u>:  Other Priority Claims;

c.    <u>Class 3</u>: Prepetition Term Loan Claims;

d.    <u>Class 4</u>: General Unsecured Claims;

e.    <u>Class 5</u>: Intercompany Claims; and

f.    <u>Class 6</u>: Existing Equity Interests.

29.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class.[19]  In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes set forth in the Plan, and the classification scheme was not implemented for any improper purpose and does not unfairly discriminate between or among the Holders of the Claims or Interests.[20]  Specifically, the Plan separately classifies the Claims because each Holder of such

---

provisions it was most directly aimed at were [s]ections 1122 and 1123."); *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[18] 11 U.S.C. § 1122(a).

[19] Smith Declaration ¶ 8.

[20] *Id.* at ¶ 9.

Claim may hold (or may have held at the time the Plan was filed) rights in the Estates that were legally dissimilar to the Claims in other Classes.  For example, debt and equity are separately classified and secured debt is separately classified from unsecured debt.  Other aspects of the classification scheme reasonably recognize the different legal or factual nature of the Claims and Interests.  Finally, each Claim or Interest in each particular Class is substantially similar to every other Claim or Interest in that Class.[21]

30.     Accordingly, the Plan satisfies section 1122 of the Bankruptcy Code.

**B.      The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code**

31.     Section 1123(a) of the Bankruptcy Code sets forth seven criteria that every chapter 11 plan must satisfy.  The Plan satisfies each of these requirements, and no party has asserted otherwise.[22]

**1.      Designation of Classes of Claims and Interests (Section 1123(a)(1))**

32.     For the reasons set forth above, Article III of the Plan properly designates classes of Claim and Interests and thus satisfies the requirements of section 1122 of the Bankruptcy Code. No party has asserted otherwise.

**2.      Specification of Unimpaired Classes (Section 1123(a)(2))**

33.     Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."[23]  The Plan meets this requirement by identifying in Article III each Class that is Unimpaired.  No party has asserted otherwise.

**3.      Treatment of Impaired Classes (Section 1123(a)(3))**

34.     Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan."[24]  The Plan meets this

---

[21] *Id.* at ¶ 8.

[22] *Id.* at ¶ 10.

[23] 11 U.S.C. § 1123(a)(2).

[24] 11 U.S.C. § 1123(a)(3).

requirement by setting forth the treatment of each Class in Article III that is Impaired.  No party has asserted otherwise.

### 4.      Equal Treatment Within Classes (Section 1123(a)(4))

35.      Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[25]  The Plan meets this requirement because Holders of Allowed Claims or Interests will receive the same rights and treatment as other Holders of Allowed Claims or Interests within such holders' respective Class. No party has asserted otherwise.

### 5.      Means for Implementation (Section 1123(a)(5))

36.       Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[26]   The Plan satisfies this requirement because Article IV of the Plan, as well as other provisions thereof, provide for the means by which the Plan will be implemented.

37.      Among other things, Article IV of the Plan provides for:  (i) the consummation of the Plan, including the wind-down and dissolution of the Debtors and the vesting of the assets in the Plan Administrator; (ii) the Sale Transaction; (iii) the sources of consideration for Plan distributions, including the funding of the Wind-Down Budget; (iv) the appointment of the Plan Administrator; (v) the authorization for the Debtors and/or the Plan Administrator, as applicable, to take all actions contemplated under or necessary, advisable, or appropriate to implement or effectuate the Plan; (vi) the settlement and discharge of Claims and Interests as set forth in the Plan; (vii) the good faith compromise and settlement of all claims or controversies; (viii) the preservation and vesting of certain Retained Causes of Action in the Plan Administrator; (ix) the treatment of Executory Contracts and Unexpired Leases; (x) the dissolution of the Debtors; (xi) the

---

[25] 11 U.S.C. § 1123(a)(4).

[26] 11 U.S.C. § 1123(a)(5).

effectuation and implementation of documents and further transactions; (xii) the cancellation of existing securities and agreements; and (xiii) the authorization, approval, and entry of corporate actions under the Plan..  Accordingly, the Plan complies with section 1123(a)(5) of the Bankruptcy Code, and no party has asserted otherwise.

### 6.    Issuance of Non-Voting Securities (Section 1123(a)(6))

38.     Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.[27]  The Plan is a liquidating plan pursuant to which the Debtors' assets will be liquidated and distributed by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable.  As such, the Plan does not provide for the issuance of non-voting equity securities and section 1123(a)(6) of the Bankruptcy Code is inapplicable.  No party has asserted otherwise.

### 7.    Directors and Officers (Section 1123(a)(7))

39.     Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."[28] In accordance with Article IV.F of the Plan, as of the Effective Date, the existing board of directors of the Debtors shall be deemed to have resigned and the remaining officers of the Debtors terminated without any further action required.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates, provided that the Plan Administrator shall have no duties other than as expressly set forth in the Plan, the Proposed Confirmation Order, and the Plan Administrator Agreement, as applicable.  The identity of the Plan Administrator, along with the nature of any compensation for such person, is disclosed in the Plan Supplement.  The appointment of the Plan Administrator is consistent with the interests of

---

[27] 11 U.S.C. § 1123(a)(6).

[28] 11 U.S.C. § 1123(a)(7).

creditors and with public policy.   Accordingly, the Plan satisfies the requirements of section

1123(a)(7) of the Bankruptcy Code, and no party has asserted otherwise.

     **C.**     **The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code**

     40.     Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions

that may be incorporated into a chapter 11 plan.   Among other things, section 1123(b) of the

Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or

interests; (b) modify or leave unaffected the rights of holders of secured or unsecured claims;

(c) provide for the settlement or adjustment of claims against or interests in a debtor or its estate

or the retention and enforcement by a debtor, trustee, or other representative of claims or interests;

(d) provide for the assumption or rejection of executory contracts and unexpired leases; (e) provide

for the sale of all or substantially all of the property of a debtor's estate, and the distribution of the

proceeds of such sale among holders of claims or interests; or (f) "include any other appropriate

provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[29]

     **1.**     **Impairment and Unimpairment of Classes (Section 1123(b)(1))**

     41.     The Plan satisfies the requirements of section 1123(b)(1), and no party has asserted

otherwise.   Article III leaves each Class of Claims and Interests Impaired or Unimpaired,

respectively.

     **2.**     **Treatment of Executory Contracts and Unexpired Leases (Section 1123(b)(2))**

     42.     The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code, and no party

has asserted otherwise.   Article V of the Plan provides for the automatic rejection of the Debtors'

Executory Contracts and Unexpired Leases (other than the Indemnification Obligations, Insurance

Policies (including the D&O Liability Insurance Policies), and Employment Agreements) not

previously rejected, assumed, or assumed and assigned during these Chapter 11 Cases under

section 365 of the Bankruptcy Code, nor scheduled to be assumed under the Plan, the Plan

---

[29] *See* U.S.C. § 1123(b)(1)–(6).

Supplement, or the Sale Order (collectively, the "Assumed Contracts").  The Debtors determined, in their sound business judgment, that all of the Executory Contracts and Unexpired Leases other than the Assumed Contracts should be automatically rejected upon the Effective Date because the Debtors will commence the Wind-Down after the Effective Date and only those Executory Contracts necessary for the Wind-Down are being assumed.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(b)(2), and no party has asserted otherwise.

### 3. Release, Exculpation, and Injunction Provisions (Section 1123(b)(3), (6))

43.     The Plan also includes certain releases, an exculpation provision, and an injunction provision.  These discretionary provisions are proper because, among other things, they are the product of extensive good-faith, arms'-length negotiations, are integral to the Plan, and are supported by the Debtors and all of their key stakeholders.[30]

### i. The Debtor Releases Are Appropriate and Comply with the Bankruptcy Code

44.     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[31]  Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code if the release is fair and equitable and in the best interests of the estate.[32]  Courts in the Fifth Circuit generally interpret the "fair and equitable" prong, consistent with that term's usage in section 1129(b) of the Bankruptcy Code, to require compliance with the Bankruptcy Code's absolute priority rule.[33]  Courts generally determine whether a release is "in the best interest of the estate" by reference to the following factors:

     a.     the probability of success of litigation;

---

[30] Smith Declaration ¶ 13.

[31] 11 U.S.C. § 1123(b)(3)(A).

[32] *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (finding that plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the Debtors and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan"); *In re Heritage Org., LLC*, 375 B.R. at 259; *In re Mirant Corp.*, 348 B.R. 725, 737–39 (Bankr. N.D. Tex. 2006); *In re Gen. Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).

[33] *In re Mirant Corp.*, 348 B.R. at 738.

b.      the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay, and possible problems collecting judgment;

c.      the interest of creditors with proper deference to their reasonable views; and

d.      the extent to which the settlement is truly the product of arms'-length negotiations.[34]

Ultimately, courts afford the Debtors some discretion in determining for themselves the appropriateness of granting plan releases of estate causes of action.[35]

45.      Article IX.A of the Plan contains a Debtor release provision (the "Debtor Releases"), which releases certain Claims or Causes of Action that the Debtors or their Estates may have or hold against the Released Parties.[36]  The Debtor Releases meet the applicable standard because they are fair and equitable and in the best interests of the Debtors' Estates.  As described in the Confirmation Declaration, the Debtor Releases were heavily negotiated, both prepetition and pursuant to the sale and Plan negotiations, by sophisticated entities that were represented by able advisors and constitute an integral part of the Plan.  In addition, the Debtor Releases do not circumvent the absolute priority rule, balance the likelihood of success on any released claim as against the complexity and likely duration of the litigation, and represent the interests of the creditors, who overwhelmingly support their inclusion in the Plan.  Finally, each of the Released Parties has provided significant consideration for the Debtor Releases, including through the negotiation, formulation, and ultimately, the effectuation of the transactions contemplated in the Plan, along with the compromises and settlements set forth therein.  The Plan provides these parties

---

[34] *Id.* at 739–40.

[35] *See In re Gen. Homes Corp.*, 134 B.R. at 861 ("The court concludes that such a release is within the discretion of the Debtor.").

[36] *See* Plan, Art. IX.A.  Under the Plan, "Released Party" means collectively the Releasing Parties and each of their and their affiliates' respective predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, provided that, in each case, an Entity shall not be a Released Party if: (a) elects to opt out of the releases contained in the Plan, or (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector.

with the global closure they negotiated in exchange for, among other things, the various
concessions and benefits provided to the Debtors' estates and creditors under the Plan.[37]

46.    In light of these substantial benefits and the lack of significant (if any) value in the
potential Claims and Causes of Action being released, the Debtors are justified in agreeing to the
Debtor Releases, which are a key component to the Plan Support Agreement and the Plan.
Accordingly, the Debtor Releases are fair and equitable, in the best interests of the Estates, and
should be approved.[38]

### ii.    The Third Party Release is Appropriate and Complies with the Bankruptcy Code

47.    Article IX.B of the Plan contains a third-party release provision (the "Third Party
Release").[39]  It provides that each Releasing Party—including all Holders of Claims and Interests
who do not specifically object to or opt out of their inclusion as a Releasing Party—shall release
all Claims or Causes of Action set forth in the Third Party Release that could be asserted against
the Released Parties.[40]  The provisions of the Plan and the Plan Support Agreement, including the
Third Party Release, were heavily negotiated and the Third Party Release is integral to both

---

[37] *See, e.g.*, *In re Christian Care Centers*, Case No. 22-80000 (SGJ) (Bankr. N.D. Tex. Jan. 30, 2023) [Docket No. 419]
(approving similar debtor releases to this Plan); *In re Senior Care Center*, Case No. 18-33967 (SGJ) (Bankr. N.D.
Tex. Dec. 13, 2019) [Docket No. 2375] (approving broader debtor releases than provided by this Plan).

[38] Smith Declaration ¶ 14, 18.

[39] *See* Plan, Art. IX.B.

[40] *Id.*  Under the Plan, "Releasing Party" means collectively, and each case in its capacity as such: (a) the Debtors (b)
the Wind-Down Debtors, (c) the Prepetition Term Loan Secured Parties, (d) the Consenting Unsecured Creditors, (e)
any Statutory Committee and each of its members, (f) the holders of all Claims or Interests who vote to accept the
Plan, (g) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote
either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (h) the holders of all
Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set
forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of
the foregoing Persons, in clauses (a) through (i), each of their affiliates, and (k) with respect to each of the foregoing
Persons in clauses (a) through (j), each of their and their affiliates' respective predecessors, successors, assigns,
subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners,
managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment
bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such
Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such and for which such
Entity is legally entitled to bind such party to the releases contained in the Plan and under applicable law; provided
that the Prepetition Term Loan Secured Parties shall not be deemed to release any direct claims they may have against
former directors and officers of the Debtors who were not directors or officers as of the Petition Date; provided further
that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not
consensually resolved before Confirmation or supports any such objection or objector.

documents.[41]  Absent the Third Party Release, it is unlikely the Debtors would have been able to bring their key stakeholders groups to the bargaining table or effectuate the value maximizing transactions contemplated by the Plan.[42]  Moreover, the Third Party Release is a permissible consensual release consistent with Fifth Circuit law.[43]

48.  While a number of Fifth Circuit decisions limit the availability of third-party releases,[44] those limitations only apply to certain *non-consensual* third-party releases—*i.e.* releases that are binding on third parties despite the affected party's taking steps to object or opt out.[45] "Most courts allow *consensual* nondebtor releases to be included in a plan."[46]  This practice is consistent with the notion that "[t]he validity of a consensual release is primarily a question of contract law because releases are no different from any other settlement or contract."[47]

49.  The Fifth Circuit has not directly addressed what constitutes a consensual third-party release, but it has touched on the issue in a series of decisions addressing the *res judicata* effect of a confirmed chapter 11 plan that contains a third-party release.[48]  The *Republic Supply* court found that the Bankruptcy Code does not preclude a third-party release provision where "it has been accepted and confirmed as an integral part of a plan of reorganization."[49]  The *Republic*

---

[41] Smith Declaration ¶ 19.

[42] *Id.*

[43] *Id.* at ¶ 20.

[44] *See Ad Hoc Grp. of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1059 (5th Cir. 2012); *Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760–61 (5th Cir. 1995).

[45] *See, e.g.*, *In re Pilgrim's Pride Corp.*, No. 08-45664-DML-11, 2010 WL 200000, at *5 (Bankr. N.D. Tex. Jan. 14, 2010) (ruling that under Pacific Lumber "the court may not, *over objection*, approve through confirmation of the Plan third party protections. . . .") (emphasis added); *see also In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 701–02 (Bankr. W.D. Tex. 2011) ("[T]he Fifth Circuit does allow permanent injunctions *so long as there is consent.*") (emphasis in original).

[46] *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775 (Bankr. N.D. Tex. 2007).

[47] *Id.* (citations omitted).

[48] *See Hernandez v. Larry Miller Roofing, Inc.*, 628 Fed. App'x 281, 286–88 (5th Cir. 2016); *FOM Puerto Rico, S.E. v. Dr. Barnes Eyecenter, Inc.*, 255 Fed. App'x 909, 911–12 (5th Cir. 2007); *Applewood Chair Co. v. Three Rivers Planning & Dev. Dist. (In re Applewood Chair Co.)*, 203 F.3d 914, 919 (5th Cir. 2000); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987).

[49] *Shoaf*, 815 F.2d at 1050.

*Supply* court found that the third-party release at issue—to which no party timely objected—was binding and enforceable.[50]  The Fifth Circuit has subsequently addressed the same issue from *Republic Supply* on several occasions, focusing on the specificity of the third-party release provision at issue to determine its *res judicata* effect.[51]

50.     Ultimately, *Republic Supply* and its progeny stand for the proposition that "[c]onsensual nondebtor releases that are specific in language, integral to the plan, a condition of settlement, and given for consideration do not violate" the Bankruptcy Code.[52]  At the core of the analysis is whether the third-party release is consensual.

51.     In determining whether a release is consensual, courts focus on the process—whether "notice has gone out, parties have actually gotten it, they've had the opportunity to look it over, [and] the disclosure is adequate so that they can actually understand what they're being asked to do and the options that they're being given."[53]  Ultimately, these courts acknowledge that parties in interest waive their rights with respect to a third-party release if they vote to accept the Plan or do not opt out of the releases.[54]

52.     The Third Party Release meets the standard set forth in *Republic Supply* and its progeny.  As a threshold matter, the Third Party Release is *consensual*.[55]  All parties in interest were provided notice of these Chapter 11 Cases, the Disclosure Statement, and Plan, the deadline to object to confirmation of the Plan, and the ability to opt out of the Third Party Release.  The Ballots, which were transmitted to all Holders of Claims in the Voting Classes, and the Release

---

[50] *Id.* at 1053.

[51] *See generally Hernandez*, 628 F. App'x 281 (comparing the specificity of the third-party release provisions at issue in *Republic Supply*, *Applewood*, and *Dr. Barnes Eyecenter*).

[52] *In re Wool Growers*, 371 B.R. at 776 (citing *Republic Supply*, 815 F.2d at 1050); *Dr. Barnes Eyecenter*, 255 Fed. App'x at 911–12).

[53] Confirmation Hr'g Tr. at 47, *In re Energy & Exploration Partners, Inc.*, No. 15 44931 (Bankr. N.D. Tex. April 21, 2016) [Docket No. 730] (hereinafter "*ENXP Tr.*").

[54] *See* ENXP Tr. at 47 (reasoning that, so long as due process is satisfied, a party can waive its substantive rights by not affirmatively participating in the bankruptcy case); Confirmation Hr'g Tr. at 42, *In re Southcross Holdings, LP*, No. 16-20111 (Bankr. S.D. Tex. April 11, 2016) [Docket No. 191] (approving as consensual a third-party release provision in favor of the debtors' prepetition equity sponsors that bound all holders of claims and interest).

[55] Smith Declaration at ¶ 20.

Opt-Out form, which was transferred to all Holders of Claims and Interests not entitled to vote, both expressly state in conspicuous text that Holders of Claims and Interests who do not opt out of the release contained in the Plan will be bound by the Third Party Release. Each Ballot and Release Opt-Out form distributed also contained the full text of Article IX.B of the Plan—the Third Party Release—along with relevant definitions therein.

53.     In addition to serving the full Solicitation Packages or Notice of Non-Voting Status Packages (as applicable) on all known Holders of Claims or Interests, the Debtors served the notice of Combined Hearing on all known potential creditors, including various vendors, current and former employees, customers, and contract counterparties. In addition, the Debtors published the notice of the Combined Hearing in *The New York Times (National Edition)* and *The Seattle Times*. Critically, the notice of Combined Hearing contained the full text of the Third Party Release and informed parties, in conspicuous text, that they would be bound by the terms of the Third Party Release if they did not otherwise opt out.

54.     In addition to being consensual, the Third Party Release satisfies the other factors referenced in *Republic Supply* and its progeny.[56] ***First,*** the Third Party Release is specific, listing potential Claims and Causes of Action to be released in sufficient detail so as to put the Releasing Parties on notice of the released claims. ***Second,*** the Third Party Release is integral to the Plan and a condition of the comprehensive settlement embodied therein. As noted above, the Third Party Release was heavily negotiated by sophisticated parties in connection with the Plan Support Agreement. Absent its inclusion in the Plan, it is unlikely that the Debtors' key stakeholders would have been willing to support the Plan.[57] ***Finally,*** the Third Party Release was given for consideration.[58] The significant consideration provided by the Released Parties inured not only to the benefit of the Debtors but also to the benefit of all stakeholders by allowing these Chapter 11

---

[56] *See e.g.*, *In re AiBUY Holdco Inc.*, Case No. 22-31737 (SGJ) (Bankr. N.D. Tex. Nov. 15, 2022) [Docket No. 203] (approving broader third-party releases than provided by this Plan).

[57] Smith Declaration ¶ 19–20.

[58] *Id.* at ¶ 21.

Cases to proceed in an efficient and expedient manner thus maximizing the proceeds from the Sale

Transaction available for recovery.

55.     For all of the foregoing reasons, the Third Party Release is justified, appropriate,

and should be approved.

### iii.   The Exculpation Provision Is Appropriate and Complies with the Bankruptcy Code

56.     Article IX.C. of the Plan provides for the exculpation of the Exculpated Parties.[59]

The U.S. Trustee's Limited Objection asks the Court to strike the Debtors' professionals and

officers and the Plan Administrator from the definition of Exculpated Parties and make

corresponding changes to the Plan Administrator Agreement included in the Plan Supplement.[60]

No other party has objected to the exculpations included in the Plan or Plan Supplement.

57.     To resolve the Limited Objection, the Debtors are willing to (i) revise the Plan

Administrator Agreement as shown in **Exhibit A** hereto and (ii) revise the definition of Exculpated

Parties to read as follows:

> "collectively, (a) the Debtors and Wind-Down Debtors, (b) any Statutory Committee and each of its members, and (c) the directors of the Debtors as of the Petition Date."

58.     In its recent *Highland Capital Management, L.P.* opinion, the Fifth Circuit

considered the appropriate scope of exculpations under the Debtors' chapter 11 plan and concluded

that the list of properly exculpated parties included "the [d]ebtor, the creditors' committee and its

members for conduct within the scope of their duties, 11 U.S.C. §1103(c), and the trustees within

the scope of their duties."[61]   Importantly, the Fifth Circuit recognized "a limited qualified

---

[59] The Plan defines "Exculpated Parties" as "collectively, (a) the Debtors and Wind-Down Debtors, (b) any Statutory Committee and each of its members, (c) the Debtors' Professionals, including Sidley Austin LLP, Fenwick & West LLP, Teneo Capital LLC, Moelis & Company, and Omni Agent Solutions, and the Professionals of any Statutory Committee, and (d) any directors and officers of the Debtors as of the Petition Date."  *See* Revised First Amended Plan at Article I.A.

[60] *See Limited Objection at* ¶ 6.

[61] *See NexPoint Advisors, L.P. v. Highland Cap. Mgmt. L.P. (In re Highland Cap. Mgmt. L.P.)*, 28 F.4th 419, 437–38 (2022); *see also In re Pac. Lumber Co.*, 584 F.3d 229, 240–41 (5th Cir. 2009).  In these chapter 11 cases the Debtors, as debtors in possession pursuant to section 1107, serve as trustee of the estates and act through their boards of directors.

immunity to bankruptcy trustees unless they act with gross negligence."[62]  As a result, the Fifth Circuit approved the inclusion of exculpations in favor of the exculpation of the independent directors of Highland Capital.[63]

59.    The Limited Objection seeks to distinguish the directors of the Debtors from the directors in *Highland Capital* by cabining the Fifth Circuit's sanctioning of director exculpations to "rare circumstances – that are not present here – [where] independent directors [are] appointed by court order to act as a bankruptcy trustee pursuant to a court order."[64]  However, while the Fifth Circuit's opinion noted that the governance structure of the Debtors in *Highland Capital* was "nontraditional,"[65] that is a distinction without a difference.  Contrary to the assertions in the Limited Objection, like the Debtors' directors in these chapter 11 cases, the *Highland Capital* independent directors were duly installed under state law—albeit pursuant to a settlement including the party entitled to appoint them—not court-appointed trustees of the Debtors' estates.[66]

60.    In fact, in the very next sentence after the Fifth Circuit's opinion referenced the "nontraditional" nature of the *Highland Capital* governance structure, it justified nevertheless exculpating those parties because "[l]ike a debtor-in-possession, the Independent Directors are entitled to all the rights and powers of a trustee."[67] The Fifth Circuit's reference to a "debtor in possession" in justifying the releases of the *Highland Capital* directors makes clear that in the Fifth

---

[62] *See Highland Cap.*, 28 F.4th at 437 (noting that the issue of exculpation of bankruptcy trustees was "not before the court" in *Pacific Lumber*); *see also In re Hilal*, 534 F.3d 498, 501 (5th Cir. 2008); *Baron v. Sherman (In re Ondova Ltd.)*, 914 F.3d 990, 993 (5th Cir. 2019).

[63] *Highland Cap.*, 28 F.4th at 438.

[64] Limited Objection at ¶ 2.

[65] *Highland Cap.*, 28 F.4th at 437.

[66] *See Preliminary Term Sheet* attached to *Motion of the Debtor for Approval of Settlement With the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course, In re Highland Capital Management, L.P.*, Case No. 19-34054 (SGJ) [Docket No. 281-1] (Bankr. N.D. Tex., Dec. 27, 2019) (seeking authority of a settlement whereby the debtor's general partner, as a component of a settlement of various issues, would appoint the agreed independent directors to the debtor's board); *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course, In re Highland Capital Management, L.P.*, Case No. 19-34054 (SGJ) [Docket No. 339] (Bankr. N.D. Tex., Jan. 19, 2020) (approving same).

[67] *Id.*

Circuit, director exculpations are appropriate where the debtor in possession serves as trustee under section 1107.[68]

61.    The Plan's exculpation provision is an integral piece of the overall settlement embodied by the Plan and is the product of good faith, arms'-length negotiations.  Moreover, the Exculpation Provision is narrowly tailored to exclude acts of actual fraud, gross negligence, or willful misconduct, relates only to acts or omissions in connection with, or arising out of the Debtors' restructuring transactions, and is limited to parties who have performed valuable services as fiduciaries of the Debtors' estates in connection with these Chapter 11 Cases.    Accordingly, the exculpation provision is appropriate, justified, and necessary under the facts and circumstances of these Chapter 11 Cases and should be approved.[69]

### iv.    The Injunction Provision Is Appropriate and Complies with the Bankruptcy Code

62.    The injunction provision set forth in Article IX.D. of the Plan implements the Plan's release and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors on account of, in connection with, or with respect to any such claims or interests released or subject to exculpation.  Thus, the injunction provision is a key provision of the Plan because it enforces and implements those release and exculpation provisions that are centrally important to the Plan.  As such, to the extent the Court finds that the exculpation and release provisions are appropriate, the injunction provision must also be appropriate.[70]  Accordingly, the injunction provisions are necessary, appropriate, and should be approved.

### 4.    The Plan Complies with the Additional Provision of Section 1123(b)

63.    The Plan complies with section 1123(b)(4) of the Bankruptcy Code as any remaining assets not sold pursuant to the Sale Transaction will be liquidated pursuant to the

---

[68] 11 U.S.C. § 1107.

[69] Smith Declaration ¶ 22–24.

[70] *See, e.g.*, *In re Christian Care Centers*, Case No. 22-80000 (SGJ) (Bankr. N.D. Tex. Jan. 30, 2023) [Docket No. 419] (approving a similar injunction provision to this Plan); *In re Northwest Senior Housing Corp.*, Case No. 22-30659 (MVL) (Bankr. N.D. Tex. Apr. 7, 2023) [Docket No. 1394] (approving injunction provision).

Wind-Down for the benefit of stakeholders.  It complies with section 1123(b)(5) of the Bankruptcy Code as Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims.  Finally, any other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code sections 1123(b)(4)–(6).

## II.     The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code

64.     The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[71] The legislative history to section 1129(a)(2) provides that section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements set forth in section 1125 and the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.[72]  As set forth herein, the Debtors have complied with these provisions, including sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting acceptances of the Plan through their Notice and Claims Agent in accordance with the Disclosure Statement Order.[73]

### A.     The Debtors Complied with Section 1125 of the Bankruptcy Code

65.     As discussed in Part I of this Memorandum, the Debtors complied with the notice and solicitation requirements of section 1125 of the Bankruptcy Code.[74]

---

[71] *See* 11 U.S.C. § 1129(a)(2).

[72] *See In re Lapworth*, 1998 WL 767456, at *3 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) ("[S]ection 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the solicitation and disclosure requirements under sections 1125 and 1126 of the Bankruptcy Code."); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[73] Smith Declaration ¶ 25.

[74] *Id.* at ¶ 27.

**B.      The Debtor Complied with Section 1126 of the Bankruptcy Code**

66.      Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[75]  The Debtors did not solicit votes on the Plan from the Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) as such Classes are Unimpaired under the Plan (the "Deemed Accepting Classes") and thus presumed to accept under section 1126(f) of the Bankruptcy Code.  The Debtors did not solicit votes from Class 5 (Intercompany Claims) as such class was either Unimpaired under the Plan and thus presumed to accept or will not receive any recovery on account of their Claims at the time of solicitation, and therefore was not entitled to vote.  The Debtors also did not solicit votes from Class 6 (Existing Equity Interests) as such Class was Impaired under the Plan and not expected to receive any recovery on account of their Interests at the time of solicitation (the "Deemed Rejecting Class").  Pursuant to section 1126(g) of the Bankruptcy Code, holders of Claims and Interests in the Deemed Rejecting Class were deemed to have rejected the Plan and, therefore, were not entitled to vote on the Plan.

67.      Accordingly, the Debtor solicited votes only from the Voting Classes, constituting Holders of Allowed Claims in Class 3 (Prepetition Term Loan Claims) and Class 4 (General Unsecured Claims) because each of these Classes is Impaired and entitled to receive a distribution under the Plan.[76]  With respect to the Voting Classes of Claims, section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan.[77]

---

[75] *See* 11 U.S.C. § 1126.

[76] *See generally* Voting Report, Ex. A.

[77] 11 U.S.C. § 1126(c).

68.     The Voting Report, summarized in Part I above, reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.  Based on the foregoing, the Debtor submits that it has satisfied the requirements of section 1129(a)(2), and no party has asserted otherwise.[78]

## III.     The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code

69.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."  Where a plan satisfies the purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[79]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[80]

70.     The Plan was proposed with honesty, good intentions, and with the goal of maximizing stakeholder recoveries.[81]  Throughout these Chapter 11 Cases, the Debtors, their directors, and their management team have upheld their fiduciary duties to stakeholders and protected the interests of all constituents, including the general unsecured creditors.[82]  The Plan facilitates transactions that will provide significant value to the Debtors' stakeholders compared to the alternative of a chapter 7 liquidation.[83]  Finally, the Plan is affirmatively supported by the Debtors' key economic stakeholders, including, the Consenting Prepetition Secured Parties a

---

[78] Smith Declaration ¶ 29.

[79] *See, e.g.*, *In re Block Shim Dev. Company-Irving*, 939 F.2d 289, 292 (5th Cir. 1991) (noting the fundamental purpose of the Bankruptcy Code); *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985) (determining whether plan met good faith standard).

[80] *E.g., T-H New Orleans*, 116 F.3d at 802 (quoting *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012).

[81] Smith Declaration ¶ 30–32.

[82] *Id.*

[83] *Id.*

significant portion of the Debtors' unsecured creditors.[84]   Accordingly, the Plan and the Debtors'

conduct satisfy section 1129(a)(3) of the Bankruptcy Code, and no party has asserted otherwise.

**IV.   The Plan Provides that the Payment of Debtors' Professional Fees and Expenses Are Subject to Court Order in Compliance with Section 1129(a)(4)**

71.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses

paid by the plan proponent, by the debtor, or by a person receiving distributions of property under

the plan, be subject to approval by the Court as reasonable.   Courts have construed this section to

require that all payments of professional fees paid out of estate assets be subject to review and

approval by the Court as to their reasonableness.[85]

72.    The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.[86]   All payments

made, or to be made, by the Debtors for services or for costs or expenses in connection with these

Chapter 11 Cases prior to the Confirmation Date, including all Professional Fee Claims, have been

approved by, or are subject to approval of, the Court.[87]   Article II.B.1. of the Plan provides that all

final requests for payment of Professional Fee Claims shall be filed no later than 45 days after the

Effective Date for determination by the Court, after notice and a hearing, in accordance with the

procedures established by the Court except as such procedures have been otherwise modified by

the Plan.[88]   Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of

the Bankruptcy Code, and no party has asserted otherwise.

**V.    The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, or Insiders and Therefore Complies with Section 1129(a)(5)**

73.    The Bankruptcy Code requires the plan proponent to disclose the affiliation of any

individual proposed to serve as a director or officer of the debtor or a successor to the debtor under

---

[84] *Id.*

[85] *See In re Cajun Elec. Power Coop.*, 150 F.3d at 518 ("Section 1129(a)(4) by its terms requires court approval of any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case.") (internal citations omitted); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[86] Smith Declaration ¶ 33.

[87] *See* Plan, Art. II.

[88] *Id.*

the plan.[89]  Section 1129(a)(5)(A)(ii) further requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[90]

74.     Here, Article IV.F of the Plan provides for the dissolution of the existing board of directors of the Debtors and the removal of any remaining directors or officers of the Debtors as of the Effective Date.[91]  As such, section 1129(a)(5) of the Bankruptcy Code is inapplicable to the Plan.  To the extent section 1129(a)(5) applies to the Plan Administrator, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity and affiliations of the person proposed to serve as Plan Administrator in the Plan Supplement.  Moreover, the Plan Supplement identifies any insider to be employed by the Plan Administrator in compliance with section 1129(a)(5)(B).[92]  Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code are satisfied, and no party has asserted otherwise.[93]

## VI.   The Plan Does Not Require Governmental Regulatory Approval and Therefore Complies with Section 1129(a)(6)

75.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable to this Chapter 11 Case, and no party has asserted otherwise.[94]

## VII.  The Plan Is in the Best Interest of Creditors and Therefore Complies with Section 1129(a)(7)

76.     Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," provides, in relevant part:

With respect to each impaired class of claims or interests—

---

[89] 11 U.S.C. § 1129(a)(5)(A)(i).

[90] *Id.* § 1129(a)(5)(A)(ii).

[91] *See* Plan, Art. IV.F.

[92] 11 U.S.C. § 1129(a)(5)(B).

[93] Smith Declaration ¶ 34–35.

[94] *Id.* at ¶ 36.

    (A)    each holder of a claim or interest of such class—

        (i)    has accepted the plan; or

        (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of [the Bankruptcy Code] on such date . . . .[95]

77.    The best interests test applies to individual dissenting holders of impaired claims and interests rather than classes, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan.[96]   As section 1129(a)(7) of the Bankruptcy Code makes clear, the best interests test applies only to holders of non-accepting impaired claims or interests.  Classes 3 and 4 have voted to accept the Plan.  The Deemed Rejecting Class did not vote on the Plan, therefore, the Plan can only be confirmed if each such Holder of a Claim or Interest will receive at least as much under the Plan as that Holder would receive in a chapter 7 liquidation.[97]

78.    As set forth in the Plan Supplement, the Debtors, with the assistance of their advisors, prepared a liquidation analysis that estimates recoveries for members of each class under the Plan.  The projected recoveries under the Plan are equal to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.   Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test, and no party has asserted otherwise.[98]

---

[95] *Id.* § 1129(a)(7).

[96] *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Adelphia Commc'ns. Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[97] *See In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985), aff'd, 785 F.2d 1033 (5th Cir. 1986) (stating that "best interests" of creditors means "creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation of the Debtor as of the effective date of the Plan").

[98] Smith Declaration ¶ 37–38.

**VIII.** **The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code**

79.      Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Holders of Interests in the Deemed Rejecting Class were deemed to have rejected the Plan and, thus, were not entitled to vote.  Consequently, while the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.[99]

**IX.** **The Plan Provides for Payment in Full of All Allowed Priority Claims in Compliance with Section 1129(a)(9) of the Bankruptcy Code**

80.      Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.  In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims.  Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).[100]  Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.[101]

---

[99] *Id.* at ¶ 39.

[100] 11 U.S.C. § 1129(a)(9)

[101] 11 U.S.C. §§ 507(a)(1)–(7), 1129(a)(9).

81.     The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.[102] *First*, Article II.A. of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim shall receive cash or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.[103]   *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan and such Claims have been, or will be, paid in the ordinary course.  Finally, Article II.C. of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that holders of Allowed Priority Tax Claims will receive cash or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.[104] The Plan thus satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code, and no party has asserted otherwise.

## X.     At Least One Class of Impaired, Non-Insider Claims Accepted the Plan in Compliance with Section 1129(a)(10) of the Bankruptcy Code

82.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.[105]

83.     As set forth above, Holders of Claims in Classes 3 and 4 voted to accept the Plan independent of any insider's vote.[106]   Thus, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code, and no party has asserted otherwise.[107]

---

[102] Smith Declaration ¶ 40.

[103] *See* Plan, Art. II.A.

[104] *Id.*, Art. II.C.

[105] 11 U.S.C. § 1129(a)(10).

[106] *See* Voting Report, Ex. A.

[107] Smith Declaration ¶ 41–42.

## XI. The Plan Is Feasible in Compliance with Section 1129(a)(11) of the Bankruptcy Code

84.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation.  Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[108]

85.    To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[109]  Rather, a debtor must provide only a reasonable assurance of success.[110]  There is a relatively low threshold of proof necessary to satisfy the feasibility requirement.[111]  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.[112]  Bankruptcy courts have found that feasibility is established where a debtor has "sufficient resources" to meet its obligations under a liquidating plan, including its "obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases."[113]  Other courts have said that, to demonstrate that a liquidating plan is feasible, a plan proponent need only show that "the successful performance of [the plan's] terms is not dependent or contingent upon any future, uncertain event."[114]

---

[108] 11 U.S.C. § 1129(a)(11).

[109] *Kane v. Johns-Manville Corp*., 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.").

[110] *Kane*, 843 F.2d at 649; *W.R. Grace & Co*., 475 B.R. at 115; *see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),* 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation"); *accord In re Capmark Fin. Grp. Inc*., No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

[111] *See, e.g., In re Prussia Assocs*., 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D. N.J. 1996); *In re Tribune Co.,* 464 B.R. 126, 185 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464 B.R. 208 (Bankr. D. Del. 2011).

[112] *See In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985).

[113] *In re Finlay Enters., Inc.,* No. 09-14873 JMP, 2010 WL 6580628, at *7 (Bankr. S.D.N.Y. June 29, 2010).

[114] *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. Aug. 31, 2007) (holding that the creation of a creditor trust with res consisting of estate cash and the proceeds of any future successful litigation in addition to a fixed trust governance mechanism qualified as feasible).

86.     Here, the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code by providing reasonable procedures, by which, the Debtors and the Plan Administrator may make the necessary distributions under the Plan.[115]   The Debtor projects that all Allowed Priority and Allowed Administrative Claims under the Plan will be satisfied as outlined in the Plan and Confirmation Order.   Moreover, and as explained in the Confirmation Declaration, the Plan provides the financial wherewithal necessary to implement the Plan, fund the Wind-Down, and offer reasonable assurance that the Plan is workable and has a reasonable likelihood of success.   The Wind-Down Debtors will continue this process following the Effective Date under the guidance of the Plan Administrator.   Accordingly, the Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code, and no party has asserted otherwise.

## XII.   All Statutory Fees Have or Will Be Paid in Compliance with Section 1129(a)(12)

87.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."[116]   Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.[117]

88.     The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article II.D of the Plan provides that all fees due and payable pursuant to section 1930 of title 28 of the United States Code, shall be paid by the Debtor on the Effective Date.   After the Effective Date, any and all Statutory Fees shall be paid to the U.S. Trustee when due and payable, and the Debtor or Plan Administrator, as applicable, shall remain obligated to pay the U.S. Trustee Statutory Fees until the earliest of the Debtors' cases being closed, dismissed, or converted to case

---

[115] Smith Declaration ¶ 43–45.

[116] 11 U.S.C. § 1129(a)(12).

[117] *Id.* § 507(a)(2).

under chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(12), and no party has asserted otherwise.[118]

## XIII.   The Debtor Has No Retiree Benefit Obligations (Section 1129(a)(13))

89.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.  The Debtor does not have any obligation to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code).  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan, and no party has asserted otherwise.

## XIV.   Sections 1129(a)(14), (a)(15) and (a)(16) Do Not Apply to the Plan

90.    Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.  Since the Debtors are not subject to any domestic support obligations, the requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.  Likewise, section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.  Because the Debtors are not an "individual," the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.  Finally, the Debtors are a moneyed, business, or commercial corporation and therefore section 1129(a)(16) of the Bankruptcy Code, which provides that property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust be made in accordance with any applicable provisions of nonbankruptcy law, is not applicable to these Chapter 11 Cases.

## XV.   The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code

91.    Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan

---

[118] Smith Declaration ¶ 46–47.

proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[119]

A.    **The Plan Does Not Unfairly Discriminate Unfairly and Thus Satisfies Section 1129(b)(1) of the Bankruptcy Code**

92.    Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[120]   In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[121]   A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[122]

93.    Here, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.   Claims in the non-accepting Impaired Class—*i.e.*, Class 6 (Existing Equity Interests)—are all legally distinct from other Classes and all Claims of a similar legal nature are afforded the same treatment under the Plan.   The remaining Classes set forth in the Plan have either voted to accept the Plan or are deemed to have accepted the Plan, rending section 1129(b).   Therefore, the Plan may be confirmed despite

---

[119] *John Hancock*, 987 F.2d at 157 n.5; *In re Ambanc La Mesa L.P.,* 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

[120] *In re 203 N. LaSalle St. Ltd. P'ship*., 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am*., 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established.").

[121] *See e.g.*, *See In re Idearc Inc.*, 423 B.R. 138, 171 (Bankr. N.D. Tex. 2009) ("[T]he unfair discrimination standard prevents creditors and equity interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so.").

[122] *See In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *31 (Bankr. D. Del. May 13, 2010).

the fact that not all Impaired Classes have voted to accept the Plan, and no party has asserted otherwise.[123]

**B.    The Plan is Fair and Equitable and Thus Satisfies Section 1129(b)(2)(B) of the Bankruptcy Code**

94.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[124]  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.

95.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.[125] *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.  *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes.  The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of any Claim or Interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.  Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in the Deemed Rejecting Classes and, as a result, the Plan satisfies the fair and equitable standard of section 1129(b)(2)(B) of the Bankruptcy Code, and no party has asserted otherwise.

**XVI.    The Debtor Complied with Sections 1129(d) and (e) of the Bankruptcy Code**

96.    Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the

---

[123] Smith Declaration ¶ 50–51.

[124] *Bank of Am.*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

[125] Smith Declaration ¶ 52–53.

application of section 5 of the Securities Act of 1933."[126]  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because the Chapter 11 Cases are not "small business case[s]."[127]  Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements, and no party has asserted otherwise.

## XVII. Modifications to the Plan

97.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Further, when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[128]

98.    Since the commencement of solicitation on February 29, 2024, the Debtors modified the Plan to clarify certain language related to the post-Effective Date treatment of the Debtors' insurance policies. None of the modifications to the Plan adversely affect the treatment of any party in interest without their consent; rather, the modifications simply make clearer the

---

[126] *See* 11 U.S.C. § 1129(d).

[127] *See* 11 U.S.C. § 1129(e).

[128] *See, e.g., In re Federal–Mogul Global Inc.*, 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988) (finding that nonmaterial modifications that do not adversely impact parties who have previously voted on the plan do not require additional disclosure or resolicitation); *In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850, 857 (Bankr. S.D. Tex. 2001) (same).

respective rights of the Debtors, their insurers, and their creditors and interest holders. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.[129]  No party has asserted otherwise.

### XVIII.   Good Cause Exists to Waive the Stay of the Proposed Confirmation Order

99.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[130] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

100.    Good cause exists for waiving and eliminating any stay of the Proposed Confirmation Order so that the Proposed Confirmation Order will be effective immediately upon its entry.[131]  As noted above, this Plan is the product of extensive, good-faith negotiations among the Debtors and their key stakeholders.  Additionally, each day the Debtors remain in chapter 11, they incur significant administrative and professional costs that directly reduce the amount of distributable value for creditors.  Based on the foregoing, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the Proposed Confirmation Order may be effective immediately upon its entry.

### CONCLUSION

For all of the reasons set forth herein and in the Declarations in Support, including the nearly entirely uncontested nature of the Plan, the Debtors respectfully request that the Court confirm the Plan and grant such other and further relief as is just and proper.

---

[129] Smith Declaration ¶ 61.

[130] Bankruptcy Rule 3020(e).

[131] Smith Declaration ¶ 58.

Dated: March 30, 2024
Dallas, Texas

**SIDLEY AUSTIN LLP**

/s/ *Rakhee V. Patel*

Samuel A. Newman (admitted *pro hac vice*)
1999 Avenue of the Stars
Los Angeles, California 90071
Telephone:    (310) 595-9500
Facsimile:    (310) 595-9501
Email:         sam.newman@sidley.com

Rakhee V. Patel (TX Bar No. 00797213)
Nathan C. Elner (admitted *pro hac vice*)
Parker G. Embry (TX Bar No. 24126826)
Chelsea M. McManus (TX Bar No. 24131499)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:         rpatel@sidley.com
               nelner@sidley.com
               parker.embry@sidley.com
               cmcmanus@sidley.com

Jackson T. Garvey (admitted *pro hac vice*)
One South Dearborn
Chicago, IL 60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
Email:         jgarvey@sidley.com

*Counsel to the Debtors and Debtors in Possession*

## **Certificate of Service**

I certify that on March 30, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Rakhee V. Patel*
Rakhee V. Patel