# Exhibit A

**Proposed Revisions to Plan Administrator Agreement**

**PLAN ADMINISTRATOR AGREEMENT**

THIS PLAN ADMINISTRATOR AGREEMENT (the "Agreement") is entered into this [●] day of April, 2024, by and among Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd (collectively, the "Debtors") in the chapter 11 bankruptcy cases jointly administered under Case No. 23-80016 (SGJ) (the "Chapter 11 Cases"), and Teneo Capital LLC to provide the services of its employee, Brandon Smith (Senior Managing Director), as the Plan Administrator under the Plan (in such capacity, the "Plan Administrator") (each a "Party" and collectively, the "Parties").

W I T N E S S E T H:

WHEREAS, on December 19, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), thereby commencing the Chapter 11 Cases;

WHEREAS, on February 26, 2024, the Debtors filed the *Solicitation Version of First Amended Plan* [Docket No. 253] (as may be amended, modified, or supplemented, the "Plan") with the Bankruptcy Court;

WHEREAS, pursuant to the Plan, as of the Effective Date, the Plan Administrator, selected by the Debtors in consultation Oaktree Fund Administration, LLC, in its capacity as Prepetition Term Loan Administrative Agent, ("Oaktree"), shall be appointed and thereafter serve in accordance with the Plan;

WHEREAS, on [●], 2024, the Bankruptcy Court entered an order confirming the Plan [Docket No. [●]] (the "Confirmation Order"). Copies of the Plan and Confirmation Order are attached hereto as **Exhibit A** and **Exhibit B**, respectively, and are incorporated herein by reference;

NOW, THEREFORE, for and in consideration of the promises and mutual covenants herein contained, pursuant to the Plan, the Parties do hereby covenant and agree as follows:

**ARTICLE I**

**Definitions; Interpretive Rules.**

1.1    Terms Defined in Plan.  Any capitalized term used and not defined herein shall have the respective meanings ascribed to such terms in the Plan.

1.2    Interpretive Rules.  For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (a) references to "Articles", "Sections", "Exhibits", and other subdivisions, without reference to a particular document, are to be designated Articles, Sections, Exhibits, and other subdivisions of this Agreement; (b) the use of the term "including" means "including but not limited to"; and (c) the words "herein", "hereof", "hereunder", and other words of similar import refer to this Agreement as a whole and not to any

particular provision (unless otherwise specified). The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement. The singular shall include the plural and the plural the singular, when the context so requires, and the feminine, the masculine, and the neuter genders shall be mutually inclusive.

## ARTICLE II

### Appointment of the Plan Administrator

2.1    Appointment and Acceptance.   Brandon Smith is hereby appointed as the Plan Administrator, and the Plan Administrator hereby accepts such appointment. On the Effective Date and automatically and without further action, all actions and services performed by the Plan Administrator in connection with its duties and obligations under this Agreement prior to the Effective Date, and the authorization and payment for such performance, including the Plan Administrator's professional fees and expenses, shall be ratified and authorized to the extent not already authorized by the Plan or Confirmation Order.

### Rights and Powers of Plan Administrator

2.2    In addition to the powers and authority specified in the Plan and subject to Article III herein, the Plan Administrator shall be empowered to:

(a)    open and maintain bank accounts on behalf of, or in the name of, the Debtors and the Debtors' Estates, including the establishment, re-evaluation, adjustment, and maintenance of accounts to establish appropriate reserves, and designate additional authorized signatories on bank accounts as may be necessary;

(b)    calculate and make distributions and other payments, in each case as provided for, or contemplated by, the Plan, the Confirmation Order, or this Agreement;

(c)    use, acquire, and dispose of any assets of the Debtors not previously sold pursuant to the Sale Transaction (the "Remaining Assets"), and prosecute, compromise, or settle any Claims and Causes of Action (together with the Remaining Assets, the "Plan Administrator Assets") without supervision of or approval by the Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order;

(d)    collect and liquidate the Plan Administrator Assets, legal title to which shall be held by the Debtors and their Estates in the care of the Plan Administrator;

(e)    abandon any Plan Administrator Assets (other than Cash and cash equivalents) that the Plan Administrator reasonably determines to be without material monetary value or burdensome to the Plan Administrator's administration of the Plan Administrator Assets, in each case after giving effect to the costs and expenses reasonably expected to liquidate such assets to Cash;

3

(f) in connection with closing the Chapter 11 Cases, donate any remaining Cash in accordance with the terms of the Plan, including with respect to any distributions deemed as unclaimed property pursuant to the Plan, to a 501(c)(3) charity of its choice with the consent (not to be unreasonably withheld, conditioned or delayed) of the Prepetition Term Loan Administrative Agent;

(g) (i) where reasonably necessary or appropriate, defend against and object to any Claims and litigate such objections to resolution, (ii) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claim, and (iii) supervise and administer the resolution, any settlement, and payment of Allowed Claims pursuant to the Plan or the Bankruptcy Code, in each case without further Bankruptcy Court approval (collectively, the "Claims Resolution Process");

(h) as applicable, administer and pay taxes, including, among other things (i) file tax returns (to the extent not the obligation of any Purchaser), (ii) represent the interest and account of the Debtors before any taxing authority in all matters, and (iii) engage tax professionals to assist with such matters and compensate such professionals from the Plan Administrator Assets;

(i) distribute information statements as required for U.S. federal income tax and other applicable tax purposes;

(j) pay all lawful expenses, debts, charges, taxes, and liabilities of the Debtors and their Estates in accordance with this Agreement, the Plan, and the Confirmation Order;

(k) withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Plan Administrator has determined, in its reasonable discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local, or political subdivision thereof;

(l) effect all actions and enter into any agreement or execute any document or instrument required by, or consistent with, the Plan, the Confirmation Order, or this Agreement and perform all obligations thereunder;

(m) purchase and carry all Insurance Policies and pay all insurance premiums and costs it deems reasonably necessary or advisable;

(n) retain and compensate, without the need for retention or fee applications or further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration of the Estates and the administration, prosecution, and distribution of the Plan Administrator Assets as is reasonably necessary in accordance with the Plan, the Confirmation Order, and this Agreement;

(o) make distributions to Professionals for Allowed Professional Fee Claims from the Professional Fee Reserve Account and, to the extent the Professional Fee Reserve Account is insufficient, other Plan Administrator Assets;

(p)     make distributions to Holders of Allowed Claims in accordance with the terms of the Plan;

(q)     file post-confirmation and post-Effective Date reports and pay statutory fees as and when they become due;

(r)     implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Agreement relating to the Debtors, their Estates, and the Plan Administrator Assets;

(s)     take all actions reasonably necessary to wind down the Estates;

(t)     file one or more motions to close the Chapter 11 Cases;

(u)     address and satisfy any ongoing obligations of the Debtors as set forth in the Asset Purchase Agreement [Docket No. 207]; and

(v)     take all other actions consistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable to administer the Plan Administrator Assets in accordance with the Plan, the Confirmation Order, this Agreement, and applicable law.

2.3     Pursuit and Resolution of the Debtors' Retained Causes of Action.  Subject to Article III herein, in accordance with section 1123(b) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action and Causes of Action of the Debtors that are not otherwise transferred or sold pursuant to the Sale Transaction, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtors and the Plan Administrator as of the Effective Date.

2.4     Plan Administrator as Debtor/Estate Representative.  On the Effective Date and to the extent necessary to give full effect to its administrative rights and duties under the Plan, the Plan Administrator:

(a)     shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under chapter 7 of the Bankruptcy Code and section 1106 of the Bankruptcy Code; and

(b)     pursuant to Section IV.B of the Plan, shall succeed to all powers as would have been applicable to each Debtor's directors, officers, and managers; *provided, however*, that the Plan Administrator may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in its reasonable discretion.

2.5     Permitted Investments.  The Plan Administrator is authorized, in its sole discretion, to invest the Plan Administrator Assets; provided, that any investments of the Plan Administrator

Assets (i) shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs and (ii) shall be limited to demand and time deposits, such as certificates of deposit, having maturities of not more than one year, and U.S. Treasury bills or other temporary liquid investments that are readily convertible to known amounts of Cash.  The Plan Administrator shall have no liability for interest or producing income on any moneys received hereunder, and held for distribution or payment pursuant to the terms of the Plan and this Agreement.

2.6    Limitations on the Plan Administrator.  Notwithstanding anything to the contrary under applicable law permitting any such action, the Plan Administrator shall not do or undertake any of the following:

(a)    receive transfers of any listed stocks or securities, or any readily marketable securities, except as is absolutely necessary or required under the Plan and the Confirmation Order;

(b)    retain Cash or cash equivalents in excess of a reasonable amount necessary to (i) fulfill obligations related to the Plan or this Agreement, including reserves with respect thereto (ii) make specified distributions, and (iii) satisfy any liabilities of the Debtors and their Estates;

(c)    receive or retain any operating assets of an ongoing business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation or other Entity with operating assets;

(d)    accept, guarantee, endorse or otherwise assume or take on, directly or indirectly, any obligation or other liability, monetary or otherwise, on behalf of the Debtors other than as required or permitted by the Plan or the Confirmation Order;

(e)    take any actions inconsistent with the orderly liquidation of the Plan Administrator Assets or as are required by applicable law, the Plan, or the Confirmation Order; or

(f)    engage in any business or trade except as consistent with the orderly and expeditious liquidation of the Plan Administrator Assets; *provided, however,* that the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not conflict or interfere in any manner with the Plan Administrator's administration of the Plan Administrator Assets.

2.7    Wind-Down Budget.

(a)    On and after the Effective Date, pursuant to the terms of the Plan, the Plan Administrator shall operate according to the budget, subject to the approval of Oaktree as Prepetition Term Loan Administrative Agent, for the fees and expenses associated with the Debtors' Wind-Down, including, but not limited to, payment of allowed priority claims, tax claims, and insurance costs (the "Wind-Down Budget").

(b)     Any funds remaining in the Wind-Down Budget at the time of entry of the final decree closing these Chapter 11 Cases shall be distributed pursuant to the terms of the Plan and this Agreement.

2.8     Professional Fee Reserve Account.  The Plan Administrator shall maintain the Professional Fee Reserve Account in accordance with the terms of the Plan and the Cash Collateral Order.  To the extent there are any excess amounts remaining in the Professional Fee Reserve Account following the satisfaction of all Professional Fee Claims, the Plan Administrator shall distribute such funds pursuant to the terms of the Plan.

2.9     Retention of Counsel and Agents.

(a)     The Plan Administrator shall retain legal counsel and shall retain other advisors and professionals (collectively, the "Plan Administrator Professionals") in the Plan Administrator's sole discretion.

(b)     Any professionals retained by the Plan Administrator shall be entitled to compensation for all reasonable and documented services rendered and monthly reimbursement of reasonable and documented fees, costs, and expenses incurred.  The payment of the fees, costs, and expenses of the Plan Administrator and Plan Administrator Professionals incurred after the Effective Date shall be made in the ordinary course of business and shall not be subject to prior approval of the Bankruptcy Court.

2.10    Compensation of Plan Administrator.

(a)     The Plan Administrator shall be entitled to compensation as set forth hereto as **Exhibit C** (the "Fees"), and reimbursement of reasonable and documented out of pocket fees, costs, and expenses (the "Expenses").

(b)     The Fees and Expenses shall be payable without further Bankruptcy Court order or any notice or action.

(c)     Subject to subsection (b), the Plan Administrator shall also be entitled to Fees rendered and Expenses incurred (including reasonable and documented legal fees and costs), prior to the Effective Date in connection with this Agreement, and upon the Effective Date, all of such Fees and Expenses shall be paid.

2.11    Resignation or Death Plan Administrator.

(a)     The Plan Administrator may resign at any time by giving at least thirty (30) days' written notice of the Plan Administrator's intention to do so.  In the event of a resignation, the resigning Plan Administrator shall render to the successor Plan Administrator a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Plan Administrator.  The resignation shall be effective on the later of: (i) the date specified in the notice; (ii) the date that is thirty days (30) after the date the notice is delivered; or (iii) the date the accounting described in the preceding sentence is delivered.

(b) In the event that the Plan Administrator resigns pursuant to subsection (a) or is otherwise no longer available for any reason, the Plan Administrator shall designate another Person or Entity to serve as successor Plan Administrator within thirty (30) days, or such time as may be extended for cause, and thereupon such successor Plan Administrator, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor. Notice of any such selection shall be filed with the Bankruptcy Court. Without limiting the generality of the foregoing, in the event of any dispute over removal or selection of the Plan Administrator, including whether or not "Cause" for removal exists as described herein or any other dispute over the terms of this Agreement or the Plan Administrator's performance hereunder, the Plan Administrator or any party-in-interest may request appropriate relief from the Bankruptcy Court. Upon the appointment of the successor Plan Administrator, all responsibilities of the predecessor Plan Administrator relating to the Debtors or arising under the Plan or this Agreement shall be terminated; *provided, however*, that the original Plan Administrator's right to indemnification and other protections set forth herein shall survive termination and is subject to Sections 2.14 and 2.15.

(c) Upon the appointment of a successor Plan Administrator and the delivery of the then-remaining Plan Administrator Assets to the successor Plan Administrator's control, the predecessor Plan Administrator shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as Plan Administrator). A successor Plan Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Administrator shall be in any way liable for the acts or omissions of any predecessor Plan Administrator, unless a successor Plan Administrator expressly assumes such responsibility. A predecessor Plan Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Administrator for any events or occurrences subsequent to the cessation of its role as Plan Administrator. Notwithstanding anything in this Agreement, in the event a successor Plan Administrator is not appointed after thirty (30) days of the occurrence or effectiveness, as applicable, of the prior Plan Administrator's resignation, death, incapacity, or removal, any party in interest may request the Bankruptcy Court to appoint a successor Plan Administrator.

2.12 Removal of Plan Administrator. The Plan Administrator may be removed for "Cause" as determined by order of the Bankruptcy Court. For purposes of both this provision and removal, Cause shall mean:

(i) gross negligence, fraud or willful misconduct under the Plan or this Agreement that is repeated and/or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure; or

(ii) the indictment or conviction (including any plea of guilty or no contest) for any felony or other crime involving dishonesty or moral turpitude.

During the pendency of any dispute before the Bankruptcy Court regarding removal of the Plan Administrator and any appeals therefrom, the Plan Administrator shall (i) continue to discharge

the rights, obligations, and duties of the Plan Administrator, and (ii) continue to receive payment of Fees and Expenses incurred pursuant to this Agreement.

2.13 <u>Plan Provisions</u>. In connection with all actions taken in its capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable ~~exculpation,~~ release~~,~~ and indemnification and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order. For the avoidance of doubt, this <u>Section 2.13</u> does not create any rights of exculpation, release, indemnification or limitation of liability not already set forth in the aforementioned documents. Notwithstanding anything herein, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court, provided that in no event will the Plan Administrator be liable for punitive, exemplary, consequential, or special damages under any circumstances.

2.14 ~~Exculpation and~~ <u>Indemnification</u>. The Plan Administrator and all professionals retained by the Plan Administrator (collectively, the "<u>Post-Effective Date Indemnified Parties</u>"), each in their capacities as such, shall be deemed ~~exculpated and~~ indemnified, to the fullest extent of the law, in all respects by the Debtors, solely from the Plan Administrator Assets, for any losses, claims, damages, liabilities, and expenses, including reasonable attorneys' fees, disbursements, and related expenses which may incur or to which the Post-Effective Date Indemnified Parties may become subject in connection with any action, suit, proceeding, or investigation brought or threatened against one or more of the Post-Effective Date Indemnified Parties on accounts of the acts or omissions of the Plan Administrator solely in its capacity as such; *provided, however*, that the Post-Effective Date Indemnified Parties shall not be entitled to any indemnification for actions or omissions that result in willful misconduct, gross negligence, or fraud.

~~2.15 Limitation of Liability. The Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action. No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action against the Plan Administrator or the Post-Effective Date Indemnified Parties for taking any action in accordance with, or to implement the provisions of, the Plan, this Agreement, the Confirmation Order, or any order of the Bankruptcy Court other than for actions or omissions as a result of willful misconduct, gross negligence, or fraud. All Persons and Entities shall look solely to the Plan Administrator Assets for satisfaction of claims of any nature arising in connection with the affairs of the Plan administrator or claims against the Plan Administrator or the Post-Effective Date Indemnified Parties, and there shall be no personal obligation to satisfy such liabilities. The Plan Administrator may, in connection with the performance of its functions, in its sole and absolute discretion, consult with and rely upon its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Plan Administrator unless such determination is based on willful misconduct, gross negligence, or fraud, provided that in no~~

~~event will the Plan Administrator be liable for punitive, exemplary, consequential, or special damages under any circumstances.~~

2.15   [Reserved.]

2.16   Burden of Proof.  In any proceeding brought by any of the Debtors or the Estates, or any other Person or Entity who is bound by this Agreement challenging any action, determination or failure to act of the Post-Effective Date Indemnified Parties in discharge of their duties under this Agreement or the Plan, the Person or Entity bringing or prosecuting such proceeding shall have the burden of proving that such determination, action or failure to act constituted gross negligence, willful misconduct, or fraud.  Notwithstanding anything to the contrary in this Agreement or any duty otherwise existing at law or equity, each determination, action or failure to act of the Post-Effective Date Indemnified Parties in the discharge of their duties under this Agreement or Plan is, to the extent consistent with this Agreement or Plan, hereby deemed to not constitute a breach of this Agreement, the Plan or any duty hereunder, thereunder or existing at law, in equity or otherwise.

2.17   Reliance by the Plan Administrator.  Post-Effective Date Indemnified Parties may absolutely rely upon, and shall be fully protected in acting or refraining from acting if they rely upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Post-Effective Date Indemnified Party has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of gross negligence, willful misconduct, or fraud in respect of the Post-Effective Date Indemnified Parties' duties as found by a final order of the Bankruptcy Court, the Post-Effective Date Indemnified Parties may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon.

2.18   Reliance by Entities Dealing with the Plan Administrator.  In the absence of actual knowledge to the contrary, any Person or Entity dealing with the Debtors or the Estates shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Debtors or the Estates, and shall have no obligation to inquire into the existence of such authority.  Each Person or Entity who is bound by this Agreement hereby waives, to the fullest extent permitted by law, any and all defenses or other remedies that may be available against such Person or Entity to contest, negate or disaffirm any action of the Plan Administrator in connection with any such dealing.  Each and every certificate, document or other instrument executed on behalf of the Debtors or the Estates by the Plan Administrator or its representative or agents shall be conclusive evidence in favor of any and every Person or Entity relying thereon or claiming thereunder that (a) at the time of the execution and delivery of such certificate, document or instrument, this Agreement was in full force and effect, (b) the Person or Entity executing and delivering such certificate, document or instrument was duly authorized and empowered to do so for and on behalf of the Debtors or the Estates, and (c) such certificate, document or instrument

was duly executed and delivered in accordance with the terms and provisions of this Agreement and is binding upon Debtors following the Effective Date and the Estates.

2.19    Limited Recourse.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, Persons (including any professionals retained by the Plan Administrator in accordance with this Agreement) engaged in transactions with the Debtors or the Plan Administrator, shall look only to the Plan Administrator Assets to satisfy any liability incurred in connection with the carrying out the terms of this Agreement, the Plan, or the Confirmation Order.

2.20    Insurance.  The Plan Administrator may obtain, at the expense of the Debtors and with funds from the Plan Administrator Assets, commercially reasonable liability or other appropriate insurance with respect to the obligations of the Debtors, including appropriate directors' and officers' insurance with respect to the Wind-Down.

2.21    No Successor Liability.  Except as otherwise expressly provided in the Plan and Confirmation Order, the Plan Administrator: (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) is not, and shall not be, successor to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

2.22    Survival.  The provisions of this Article II shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Plan Administrator.  The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Debtors' charters, bylaws, or other organizational documents or policies shall affect the Plan Administrator's or the other Post-Effective Date Indemnified Parties' rights hereunder.

2.23    Standard of Care.  The Plan Administrator shall exercise its rights and powers vested in it by this Agreement and use reasonable business judgment in the exercise of its duties.  Subject to applicable law, the Plan Administrator shall not be liable to the Debtors or any beneficiary for any act it may do or omit to do as a Plan Administrator while acting in good faith and in the exercise of its reasonable business judgment.  The foregoing limitation on liability will apply equally to the agents, and/or employees of the Plan Administrator and Plan Administrator Professionals (as defined herein) acting on behalf of the Plan Administrator in the fulfillment of the Plan Administrator's duties hereunder.  Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking, or failing to take, any action that, based upon the advice of counsel or other professionals, the Plan Administrator determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty of the Plan Administrator.

# ARTICLE III
## Distributions

3.1     Distributions under the Plan.  Distributions of proceeds of the Plan Administrator Assets to Holders of Allowed Claims shall be made as follows:

(a)     Distributions to be made by the Plan Administrator may be made by any Person(s) designated or retained by the Plan Administrator to serve as the Disbursing Agent(s), without the need for any further order of the Bankruptcy Court.

(b)     The Plan Administrator shall be authorized, in his or her reasonable discretion, to delay distributions to Holders of Claims or otherwise determine reasonable distribution dates for such Holders, including, without limitation, based upon the status and progress of the liquidation and monetization of Plan Administrator Assets, the total number of and/or asserted claim amounts of Disputed Claims, and any other relevant factors.

(c)     The initial distributions under the Plan shall begin as soon as reasonably practicable, and subsequent distributions shall occur on a quarterly basis after the initial distributions or, at the Plan Administrator's discretion, more frequently.

3.2     Distributions on Account of Disputed Claims.  Except as otherwise provided in a Final Order or as agreed by the relevant parties, to the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

3.3     No Distributions Pending Allowance.  Notwithstanding anything in the Plan or the Confirmation Order to the contrary, no distribution will be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim.

3.4     Settling Disputed Claims.  Subject to Article II herein, the Plan Administrator is authorized to settle, or withdraw any objections to Disputed Claims following the Effective Date without any further notice to or action, order, or approval by the Bankruptcy Court.

3.5     Allocation of Distributions Between Principal and Interest.  Except as otherwise provided in the Plan or as otherwise provided by law, distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

3.6     Setoffs and Recoupments.  The Debtors and the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), and applicable bankruptcy

and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administrator of any such claim the Debtors or their Estates may have against the holder of such Claim.

3.7     U.S. Trustee Statutory Fees and Reports.  All U.S. Trustee Statutory Fees due and payable prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Plan Administrator shall pay any and all U.S. Trustee Statutory Fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each of the Debtors and the Plan Administrator, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

3.8     Date of Distributions.  Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

3.9     Tax Identification Numbers.  The Plan Administrator may require any Holder of a Claim to furnish to the Plan Administrator (i) its social security number or employer or taxpayer identification number as assigned by the IRS and (ii) the original Form W-8 or copy of Form W-9, as applicable, as completed by each Holder of a Claim, and the Plan Administrator may condition any distribution to any holder of a Claim upon the receipt of such information.

## ARTICLE IV

## Effect of the Agreement on Third Parties

4.1     There is no obligation on the part of any person dealing with the Debtors' Estates, the Debtors, the Plan Administrator, or the Plan Administrator Professionals, to see to the application of the money or other consideration paid or delivered to the Plan Administrator, or to inquire into the validity, expediency, or propriety of any such transaction, or the authority of the Plan Administrator, or any agent of the Plan Administrator, to enter into or consummate the same, except upon such terms as the Plan Administrator may deem advisable.

# ARTICLE V

**Termination of the Agreement and Amendment and Dissolution of the Debtors**

5.1    Termination of the Agreement.    This Agreement shall terminate and the Plan Administrator shall be discharged at such time as: (i) the Estates have been fully administered and all of the Plan Administrator Assets have been liquidated or abandoned, (ii) all duties and obligations of the Plan Administrator hereunder have been fulfilled, (iii) all distributions required to be made under the Plan and this Agreement have been made, and (iv) a Final Order has been entered by the Bankruptcy Court closing the last of the Chapter 11 Cases.

5.2    Dissolution of the Debtors.    The Debtors will be dissolved by the Plan Administrator as soon as practicable after the liquidation, administration, and distribution of the Plan Administrator Assets in accordance with the terms of this Agreement and the Plan, and its full performance of all other duties and functions set forth herein or in the Plan.  The Plan Administrator shall not unduly prolong the duration of the Debtors and shall at all times endeavor to resolve, settle, or otherwise dispose of all the Plan Administrator Assets and to effect the distribution of the Plan Administrator Assets to creditors in accordance with the terms hereof and dissolve the Debtors as soon as practicable.

# ARTICLE VI

**Miscellaneous**

6.1    Right to Seek Court Approval.    The Plan Administrator shall have the right to seek Bankruptcy Court approval or direction with respect to any matter relating to the administration of the Estates and Plan Administrator Assets or the performance of its duties and responsibilities under the Plan, the Confirmation Order, or this Agreement, even if such approval is not required by the Plan, the Confirmation Order, or this Agreement.

6.2    Confidentiality.    The Plan Administrator shall, and shall cause its agents and representatives to hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity or matter to which the Plan Administrator Assets relate to, of which the Plan Administrator has become aware in its capacity as Plan Administrator.

6.3    Amendments.    The Plan Administrator may modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order, including to clarify any ambiguity or inconsistency or render the Agreement in compliance with its stated purposes, provided that any such material modification, supplement or amendment should be filed with the Bankruptcy Court.

6.4    Waiver.    No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

6.5     Cumulative Rights and Remedies.  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

6.6     No Bond Required.  Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or surety or other security for the performance of its duties in any jurisdiction unless otherwise ordered by the Bankruptcy Court.

6.7     Irrevocability.  This Agreement shall be irrevocable, except as otherwise expressly provided in this Agreement and in accordance with the Plan.

6.8     Retention of Jurisdiction.  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, this Agreement, or any Entity's obligations incurred in connection herewith, including, without limitation, any action against the Plan Administrator, any Person retained by the Plan Administrator and the Post-Effective Date Indemnified Parties.

6.9     Severability.  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

6.10    Limitation of Benefits.  Except as otherwise specifically provided in this Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

6.11    Notices.  Unless otherwise expressly specified or permitted by the terms hereof, any notice, request, submission, instruction or other document to be given hereunder by a Party shall be in writing and shall be deemed to have been given, (a) when received if given in person, (b) upon delivery, if delivered by a nationally known commercial courier service providing next day delivery service (such as Federal Express), or (c) upon delivery, or refusal of delivery, if deposited in the U.S. mail, certified or registered mail, return receipt requested, postage prepaid:

**If to the Plan Administrator, addressed as follows:**

Teneo Capital LLC
Attn: Brandon Smith
280 Park Avenue
New York, New York 10017
Email: brandon.smith@teneo.com

6.12    Further Assurances.  From and after the date hereof, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may

15

reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

6.13  Counterparts.  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.  Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

6.14  Plan Controls in Event of Conflict.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  In the event of any inconsistency among this Agreement and the Plan, the provisions of the Plan and the Confirmation Order shall govern.

6.15  Preservation of Privilege.  In connection with any rights, claims, and Causes of Action that constitute Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of those Assets shall vest in the Plan Administrator.  The Plan Administrator shall seek to preserve and protect all applicable privileges and work-product relating to the any Causes of Action of the Debtors and the Estates, including but not limited to any attorney-client privilege or work product privilege attaching to any documents or communications (whether written or oral).  The Plan Administrator's receipt of such information shall not waive any such privileges, and all such privileges are expressly preserved; provided, for the avoidance of doubt, upon the Effective Date, such privileges shall belong to the Plan Administrator and shall be waivable by the Plan Administrator.

6.16  Filing Documents.  A copy of this Agreement and all amendments thereof shall be maintained in an office or residence of the Plan Administrator and shall be available for inspection upon reasonable written request seeking such inspection.

6.17  Books and Records.

(a)  On the Effective Date, all books and records of the Debtors shall be transferred to the control of the Plan Administrator.

(b)  The Debtors shall instruct any third parties or professionals possessing such books and records (including computer-generated or computer-maintained books, records and data, legal and accounting files maintained by any professional of the Debtors and other of the Debtors' books and records maintained by or in the possession of third parties), to permit access to such books and records as may be reasonably requested by the Plan Administrator.

(c)  The Plan Administrator will maintain reasonably good and sufficient books and records in respect to matters related to the Wind-Down of the Debtors.  The Plan Administrator may without Bankruptcy Court approval, destroy any documents that each believes are no longer required to effectuate the terms and conditions of the Plan.

6.18  Governing Law.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REFERENCE TO ITS

CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

6.19    Entire Agreement.  This Agreement, the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein.  This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the Parties hereto, relating to any transaction contemplated hereunder.  In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order shall govern; *provided*, *however*, that the Plan Administrator may amend, modify and/or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the Parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

6.20    Jurisdiction; Venue.  Each Party hereto irrevocably agrees that any suit, action or proceeding with respect to this Agreement shall be brought exclusively in the United States Bankruptcy Court for the Northern District of Texas, and by execution and delivery of this Agreement, each Party (a) irrevocably submits to each such jurisdiction and venue, (b) waives, to the fullest extent permitted by law, any objection that it may have to the laying of the venue of any such suit, action or proceeding brought in such court has been brought in an inconvenient forum, and (c) agrees that final judgment in any such suit, action or proceeding brought in such a court shall be conclusive and binding upon it and may be enforced in any court to the jurisdiction of which such Party is subject by a suit upon such judgment; *provided* that service of process is effected as otherwise permitted by law.

6.21    WAIVER OF JURY TRIAL.  EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY.

6.22    ~~Exculpatory~~Protective Provisions and Survival Thereof.  Whether or not expressly therein so provided, any and all ~~exculpatory provisions,~~ immunities and indemnities, payment provisions, and any limitations and negations of liability contained in this Agreement, in each case inuring to the benefit of the Plan Administrator, shall survive (a) the termination or revocation of this Agreement, and (b) as to any person who has served as Plan Administrator, the resignation or removal of such person as Plan Administrator.

*[Signature Pages to Follow on Next Page]*